Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Joanna Cuevas Ingram*
Kevin Siegel*
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, D.C. 20043
Tel: (213) 639-3900
cuevasingram@nilc.org
siegel@nilc.org

Tanya Broder*
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd. No. 108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
broder@nilc.org

Seth D. Levy (ISB No. 10703)
Vincent C. Capati*
Jacqueline D. Relatores*
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Tel: (213) 629-6000
slevy@nixonpeabody.com
vcapati@nixonpeabody.com
jrelatores@nixonpeabody.com

Brian J. Whittaker*
NIXON PEABODY LLP
799 Ninth Street, N.W., Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
bwhittaker@nixonpeabody.com

Nikki Ramirez-Smith (ISB No. 9030)
Casey Parsons (ISB No. 11323)
Talia Burnett*
Neal Dougherty*
RAMIREZ-SMITH LAW
444 W. Iowa Ave.
Nampa, ID 83686
Tel: (208) 461-1883
nsmith@nrsdt.com
cparsons@nrsdt.com
tburnett@nrsdt.com
ndougherty@nrsdt.com

*Motion for *pro hac vice* admission forthcoming
*Attorneys for Plaintiffs (additional counsel identified on the following page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABBY DAVIDS, MD, *et al.*,<br>        *Plaintiffs*,<br><br>v.<br><br>ALEX ADAMS, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*,<br>        *Defendants*. | Case No. 1:25-cv-00334-AKB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PROVISIONAL CLASS CERTIFICATION** |

Alvaro Cure Dominguez*
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel: (312) 977-4400
acuredominguez@nixonpeabody.com

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ......................................................................................... 1

II.    BACKGROUND ........................................................................................... 2

    A.    Federal Statutory and Regulatory Authority: PRWORA and Ryan White............. 2

    B.    H.B. 135 Text and Implementation....................................................... 5

    C.    Impact of H.B. 135 on Plaintiffs. ....................................................... 7

III.    LEGAL STANDARD................................................................................... 9

IV.    ARGUMENT ............................................................................................ 10

    A.    Plaintiffs Are Likely to Succeed on the Merits: H.B. 135 is Preempted. ............. 10

        1.    Congress Has Preempted the Field of Immigration Status Requirements for Public Benefits. ................................................................. 11

        2.    H.B. 135 Conflicts with Federal Law and Is Preempted. ........................ 13

    B.    Plaintiffs Will Suffer Irreparable Injury Absent a Temporary Restraining Order and Injunction. ....................................................................... 15

    C.    The Balance of Equities and Public Interest Supports a Temporary Restraining Order and Injunction. ...................................................................... 17

    D.    The Court Should Issue Relief to a Provisionally Certified Class....................... 18

    E.    Bond Should Be Waived.................................................................... 19

V.    CONCLUSION......................................................................................... 20

i

Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction
Civil Case No. 1:25-cv-00334-AKB

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ...................................................................................18

*All. for Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ...................................................................................9

*All. for Wild Rockies v. Higgins*,
    690 F. Supp. 3d 1177 (D. Idaho 2023) ......................................................................9

*Arizona Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ...................................................................................13

*Arizona Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ...................................................................................9

*Arizona v. United States*,
    567 U.S. 387 (2012) ...........................................................................................11, 13

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) .................................................................................19

*Betschart v. Oregon*,
    103 F.4th 607 (9th Cir. 2024) .................................................................................18

*Carrillo v. Schneider Logistics, Inc.*,
    2012 WL 556309 (C.D. Cal. Jan. 31, 2012), *aff'd*, 501 F. App'x 713 (9th Cir.
    2012) ........................................................................................................................18

*Chamber of Com. of U.S. v. Whiting*,
    563 U.S. 582 (2011) .................................................................................................11

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
    981 F.3d 742 (9th Cir. 2020) .......................................................................16, 17, 18

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) .................................................................................................11

*Doe v. Snyder*,
    28 F.4th 103 (9th Cir. 2022) .....................................................................................9

*Equal Access Educ. v. Merten*,
    305 F. Supp. 2d 585 (E.D. Va. 2004) ...................................................................12

*Florida Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963)..................................................................................................13

*Fraihat v. U.S. Immigr. & Customs Enf't*,
    16 F.4th 613 (9th Cir. 2021) ....................................................................................18

*Gibbons v. Ogden*,
    22 U.S. 1 (1824)........................................................................................................11

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)....................................................................................................13

*Hubbard v. City of San Diego*,
    No. 24-4613, 2025 WL 1572736 (9th Cir. June 4, 2025)..........................................9

*Idaho Org. of Res. Councils v. Labrador*,
    No. 1:25-CV-00178-AKB, 2025 WL 1237305 (D. Idaho Apr. 29, 2025) ........18, 19

*Korab v. Fink*,
    797 F.3d 572 (9th Cir. 2014) ...................................................................................12

*League of United Latin Am. Citizens v. Wilson*,
    997 F. Supp. 1244 (C.D. Cal. 1997) ...................................................................10, 12

*Lozano v. City of Hazleton*,
    724 F.3d 297 (3rd Cir. 2013) ...................................................................................13

*M.R. v. Dreyfus*,
    663 F.3d 1100 (9th Cir. 2011), *amended on other grounds*, 697 F.3d 706 (9th
    Cir. 2012).............................................................................................................16, 17

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) .................................................................................18

*Montana Med. Ass'n v. Knudsen*,
    119 F.4th 618 (9th Cir. 2024) ..................................................................................13

*Nwauzor v. GEO Grp.*,
    127 F.4th 750 (9th Cir. 2025) ..................................................................................11

*Pimentel v. Dreyfus*,
    670 F.3d 1096 (9th Cir. 2012) .................................................................................14

*Poder in Action v. City of Phoenix,*
    506 F. Supp. 3d 725 (D. Ariz. 2020) ..........................................................10, 12, 14

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ........................................................................19

*Save Our Sonoran, Inc. v. Flowers,*
    408 F.3d 1113 (9th Cir. 2005) ......................................................................19

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) ......................................................................13

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency,*
    766 F.2d 1319 (9th Cir.), *amended,* 775 F.2d 998 (9th Cir. 1985) ..........................19

**Federal Statutes**

8 U.S.C. § 1611 ...........................................................................................12

8 U.S.C. § 1611(b) .......................................................................................15

8 U.S.C. §§ 1611(b)(1)(A)-(E) ......................................................................5

8 U.S.C. § 1611(b)(1)(C) ................................................................3, 10, 14, 15

8 U.S.C. §§ 1611(b), (c)(2) ...........................................................................12

8 U.S.C. § 1611(c) ...........................................................................3, 4, 7, 14

8 U.S.C. § 1612(a)(3) ....................................................................................3

8 U.S.C. § 1612(b)(3) ....................................................................................3

8 U.S.C. § 1613 ............................................................................................3

8 U.S.C. § 1615(a) ........................................................................................3

8 U.S.C. § 1641 ............................................................................................3

8 U.S.C. § 1641(a) ........................................................................................2

8 U.S.C. § 1642(a) ........................................................................................3

8 U.S.C. § 1642(a)-(d) ..................................................................................4

8 U.S.C. § 1642(b) ............................................................................3, 4, 14

8 U.S.C. § 1642(d) ..................................................................................................3

42 U.S.C. § 300ff ..................................................................................................14

**State Statutes**

Idaho Code § 56-203 ..............................................................................................6

Idaho Code § 67-7902(2)-(3) ..................................................................................7

Idaho Code §§ 56-203 and 67-7903 ........................................................................5

Idaho Code § 67-7902 ............................................................................................5

Idaho Code § 67-7903 ............................................................................................5

Idaho Code §§ 67-7903(1) and 67-7903(3)(d) .......................................................15

**Rules**

Rule 23 ..................................................................................................................18

Rule 65(c) ..............................................................................................................20

**Regulations**

63 Fed. Reg. 41658 (Aug. 4, 1998) ....................................................................4, 15

66 Fed. Reg. 3613-02 (Jan. 16, 2001) ............................................................4, 12, 15

HRSA HAB Policy Clarification Notice 21-02 Determining Client Eligibility &
    Payor of Last Resort in the Ryan White HIV/AIDS Program Policy Notice.
    https://ryanwhite.hrsa.gov/sites/default/files/ryanwhite/grants/pcn-21-02-
    determining-eligibility-polr.pdf ..........................................................................5

**Constitutional Provisions**

U.S. Const. Article VI, cl. 2 ..............................................................................10, 11

U.S. Constitution Supremacy Clause ................................................................10, 15

**Other Authorities**

Idaho House Bill 135 ..............................................................................................1

## I.    <u>INTRODUCTION</u>

Plaintiffs Dr. Abby Davids, K.P., N.R., F.F., J.A.O.G., and John Doe[1] (collectively "Plaintiffs") seek urgent relief to prevent the implementation and enforcement of Idaho House Bill 135 ("H.B. 135"), which takes effect on July 1, 2025, and threatens to cut off life-saving HIV/AIDS treatment for some of Idaho's most vulnerable residents. H.B. 135 imposes immigration status verification requirements for access to essential, federally-funded programs— including the Ryan White HIV/AIDS Program ("Ryan White Program"), which provides for critical medical care and medications to low-income people living with HIV who lack other means of obtaining treatment. H.B. 135 is preempted by federal law, which expressly exempts the Ryan White Program from citizenship verification requirements.

The health and lives of Plaintiffs depend directly on the Ryan White Program. Dr. Abby Davids is a physician and program director at Full Circle Health, where she and her team provide comprehensive HIV care to hundreds of patients, including immigrants and refugees directly impacted by H.B. 135. K.P., N.R., F.F., J.A.O.G., and John Doe (collectively "Patient Plaintiffs") are Idaho residents living with HIV who receive antiretroviral therapy medications through the Ryan White Program. The Patient Plaintiffs face the imminent risk of losing access to the medications that keep them healthy and prevent the transmission of HIV to others.

The Ryan White Program is a federally-funded safety net that provides grants to States for services, including medical care and prescription assistance. It is designed to ensure that people living with HIV—regardless of their immigration status—can access treatments necessary to survive and to protect public health. The program's eligibility criteria, as established by federal

---

[1] Plaintiffs K.P., N.R., F.F., J.A.O.G., and John Doe concurrently filed a motion to proceed in pseudonym.

law, focus on medical need, income, and residency (not citizenship or immigration status) within the service area. Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Congress established immigration status eligibility and verification requirements for public benefits. For years, Idaho administered the Ryan White Program in accordance with PRWORA, allowing people like the Patient Plaintiffs to remain healthy and able to care for their families. But now H.B. 135 intrudes upon and usurps the exclusive authority of the federal government and threatens Plaintiffs' health and rights.

Plaintiffs therefore seek immediate injunctive relief to prevent the state from imposing its own unlawful requirement to receive Ryan White Program benefits. The relief requested is not only necessary to protect Plaintiffs' health and rights, but also to uphold the federal framework that Congress established to combat the HIV epidemic and safeguard public health.

## II.    BACKGROUND

### A.    Federal Statutory and Regulatory Authority: PRWORA and Ryan White

PRWORA was a landmark piece of legislation drastically altering public benefits and social welfare programs across the United States. In the Act, Congress dedicated an entire section to explicitly and specifically lay out which public benefits across all levels of government would be available to which noncitizen populations. Codified at 8 U.S.C. chapter 14 – "RESTRICTING WELFARE AND PUBLIC BENEFITS FOR ALIENS." The Act (1) classifies noncitizens for purposes of accessing benefits, (2) classifies benefits, (3) establishes which benefits are available to whom, and (4) demarcates clear and limited areas where States may legislate in accordance with those standards.

PRWORA establishes categories for classifying "qualified" and "nonqualified" immigrant populations. *See* 8 U.S.C. § 1641(a) (defining a "qualified alien" for purposes of public benefits

eligibility). Qualified immigrants include lawful permanent residents, refugees, asylees, and other immigrants admitted into the country for humanitarian reasons. 8 U.S.C. § 1641. It includes provisions on how to verify status. *See* 8 U.S.C. § 1642(a) (requiring the U.S. Attorney General, in consultation with the U.S. Department of Health and Human Services, to establish federal procedures for verifying that an applicant is a qualified alien, federal procedures for verifying that an applicant is a citizen, and procedures for state and local governments to verify whether an applicant is a qualified alien, nonimmigrant, or paroled alien). It requires States to follow these verification procedures with respect to federal public benefits. *See* 8 U.S.C. § 1642(b) (requiring States that administer federal public benefits to establish a verification system that complies with the regulations). The Act further exempts nonprofit organizations from being required to verify citizenship. *See* 8 U.S.C. § 1642(d).

The Act also establishes discrete categories of federal public programs, including "federal public benefits," see 8 U.S.C. § 1611(c); specified federal programs, see 8 U.S.C. § 1612(a)(3); designated federal programs, see 8 U.S.C. § 1612(b)(3); federal means-tested public benefits, see 8 U.S.C. § 1613; and certain specified school lunch and breakfast programs, see 8 U.S.C. § 1615(a). For each benefit category, the Act prescribes the availability of that benefit to different immigrant communities, as well as exempted benefits, which are to be provided regardless of immigration status. Congress explicitly exempted "Public health assistance . . . for immunizations with respect to immunizable diseases and for testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease," from the immigration status eligibility requirements in PRWORA. 8 U.S.C. § 1611(b)(1)(C).

PRWORA vests exclusive power in the U.S. Attorney General, in consultation with the U.S. Department of Health and Human Services ("HHS"), to establish verification procedures for

federal, state, and local governments to determine whether an applicant for a federally-funded public benefit program is a U.S. citizen, qualified alien, nonimmigrant, or paroled alien, as well as to confirm procedures for certain programs PRWORA classifies as exempt from such verification requirements. *See* 8 U.S.C. § 1642(a)-(d). PRWORA requires States, including Idaho, to follow the verification procedures established by the U.S. Attorney General and HHS with respect to federal public benefits. *See* 8 U.S.C. § 1642(b).

The U.S. Attorney General, in consultation with HHS, determined that Ryan White benefits are not federal public benefits as defined under 8 U.S.C. § 1611(c), and Ryan White Program benefits are specifically exempted from verification requirements. *See* PRWORA: Interpretation of "Federal Public Benefit," 63 Fed. Reg. 41658 (Aug. 4, 1998) (identifying 31 HHS programs which provide federal public benefits subject to PRWORA's limitations on alien eligibility); Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, 66 Fed. Reg. 3613-02 (Jan. 16, 2001) (U.S. Attorney General confirming that "HHS programs not listed in the notice, such as . . . programs under the Ryan White CARE Act . . . , do not meet the statutory definition of 'federal public benefit' and therefore do not have to verify the citizenship or immigration status of applicants or recipients under PRWORA.").

Ryan White services are administered through HHS and the Health Resources & Services Administration ("HRSA"), an HHS agency. Applicants may receive benefits if they meet each of the following factors: (1) the applicant has a documented diagnosis of HIV; (2) there is documentation of low-income status; and (3) there is documentation evidencing that the applicant lives or resides in the Ryan White local service area. States or localities receiving Ryan White funding may determine and define the standards for (a) low-income status based on percentage of the Federal Poverty Level sufficient to qualify for services in that area, and (b) the length and

location of residence within the service area (which may include a state, county, or municipality).
Nowhere does Ryan White guidance indicate that States are permitted to define "service area
residence" based on immigration status, outside the bounds of the CARE Act or PRWORA. HRSA
HAB Policy Clarification Notice 21-02 Determining Client Eligibility & Payor of Last Resort in
the Ryan White HIV/AIDS Program Policy Notice. (replaces Policy Number 13-02 Clarifications
on Ryan White Program Client Eligibility Determinations and Recertification Requirements)
(Effective Date: Oct. 19, 2021).[2] The Ryan White Part B Policy of the Idaho Department of Health
and Welfare ("IDHW") recognizes this fact. *See* Ex. Dr. Davids Decl., ¶ 31, Ex. D ("Per HRSA
PCN 21-02, Immigration status is irrelevant for the purposes of eligibility for [Ryan White/ADAP]
services.").

### B.    H.B. 135 Text and Implementation

H.B. 135 amends Idaho Code §§ 56-203 and 67-7903. Prior to amendment, Idaho Code
§ 67-7903 required immigration status verification for federal public benefits and state and local
public benefits as those terms are defined in federal law, *see* Idaho Code § 67-7902. Prior to H.B.
135, the statute also provided exemptions consistent with federal law that mirrored those in
PRWORA, *see* 8 U.S.C. §§ 1611(b)(1)(A)-(E); 1621(b)(1)-(4). H.B. 135 removes these
exemptions and amends Idaho Code in relevant part as follows:

> 67-7903.    VERIFICATION    OF    LAWFUL    PRESENCE    --
> EXCEPTIONS -- REPORTING.
>     (1) Except as otherwise provided in subsection (3) of this
> section *or where exempted by federal law*, ***each agency or political***
> ***subdivision of this state shall verify the lawful presence in the***
> ***United States of each natural person eighteen (18) years of age or***

---

[2] *Available at*: https://ryanwhite.hrsa.gov/sites/default/files/ryanwhite/grants/pcn-21-02-determining-eligibility-polr.pdf.

*older who applies for state or local public benefits or for federal public benefits for the applicant*.

(2) This section shall be enforced without regard to race, religion, gender, ethnicity or national origin.

(3) Verification of lawful presence in the United States shall not be required:

~~(a) For any purpose for which lawful presence in the United States is not required by law, ordinance or rule;~~

~~(b)~~(a) For obtaining health care items and services that are necessary for the treatment of an emergency medical condition of the person involved and that are not related to an organ transplant procedure;

~~(c)~~(b) For short-term, noncash, in-kind emergency disaster relief; or

~~(d) For public health assistance for immunizations with respect to immunizable diseases and testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease;~~

~~(e)~~(c) For programs, services, or assistance~~, such as soup kitchens, crisis counseling and intervention and short-term shelter specified by federal law or regulation~~ at short-term shelters that:

(i) Deliver in-kind services at the community level, including services through public or private nonprofit agencies;

(ii) Do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and

(iii) Are necessary for the protection of life or public safety~~;~~.

~~(f) For prenatal care;~~

~~(g) For postnatal care not to exceed twelve (12) months; or~~

~~(h) For food assistance for a dependent child under eighteen (18) years of age.~~

H.B. 135 (underscores and strikethroughs in original; emphasis and coloring added). It also empowers IDHW to establish the lawful presence requirements of that section. *See* H.B. 135 (amending I.C. § 56-203). Under the new provisions, state agencies now require individuals to prove "lawful presence" based upon their immigration status, before they can receive benefits for

which they actually remain eligible under federal law. H.B. 135 purports to require verification for programs that are specifically exempt from verification requirements under PRWORA. The Idaho statutes define federal public benefits according to federal statutes. I.C. § 67-7902(2)-(3) ("As used in this chapter: . . . (2) 'Federal public benefit' shall have the same meaning as provided in 8 U.S.C. section 1611(c)."). This new imposition of verification requirements—and particularly with the express deletion of "or where exempted by federal law"—unlawfully withdraws essential federally-funded care and basic necessities from some of Idaho's most at-risk residents, in direct conflict with federal law.

On April 16, 2025, Ryan White medical case managers were first informed that H.B. 135 may require them to verify immigration status after the bill's July 1, 2025 effective date. *See* Ex. Dr. Davids Decl. ¶ 22. Discussions between providers and Defendant IDHW over the impact of H.B. 135 on Ryan White care continued through May. *Id.* at ¶¶ 22-26. Finally, on May 30, 2025, IDHW confirmed that status verification would be required but continued to delay providing guidance on how to verify status through June 2025. *Id.* at ¶¶ 24-27, 35-36.

### C.    Impact of H.B. 135 on Plaintiffs.

To receive Ryan White benefits in Idaho, the Patient Plaintiffs and similarly situated individuals must complete a reenrollment process every six months. There is currently no guidance from IDHW addressing how the new verification requirements under H.B. 135 will interact with this reenrollment period. If IDHW mandates verification for all participants on July 1, individuals will lose access to Ryan White funding as soon as they exhaust their June medication supply because the program only dispenses 30-day medication refills at a time, resulting in a sudden and widespread disruption of care. Alternatively, if verification is required only at the next recertification, the loss of access will be staggered, but the harm remains—some individuals could

lose coverage as early as July, while others may retain access until as late as December, depending on their individual recertification schedules.

Without clear direction, these individuals face the imminent risk of being unable to refill life-sustaining medications. All five Patient Plaintiffs are HIV positive. Dkt. No. 2-8, Decl. of K.P. ("KP Decl.") ¶ 17; Dkt. No. 2-9, Decl. of N.R. ("NR Decl.") ¶ 19; Dkt. No. 2-10, Decl. of F.F. ("FF Decl.") ¶ 10; Dkt. No. 2-11, Decl. of J.A.O.G. ("JAOG Decl.") ¶ 14; Dkt. No. 2-12, Decl. of John Doe ("Doe Decl.") ¶ 9. All rely on the Ryan White Program to receive life-saving antiretroviral therapy ("ART"). KP Decl. ¶¶ 18-19, 21-22, 28; NR Decl. ¶¶ 20-21, 28-29; FF Decl. ¶¶ 11-12, 14; JAOG Decl. ¶¶ 15-18, 23-24; Doe Decl. ¶¶ 10-13, 19-20. All of the patient plaintiffs risk losing access to this care if required to verify their status under the new law. KP Decl. ¶¶ 6, 9-16; NR Decl. ¶¶ 7, 11-18; FF Decl. ¶¶ 4-5, 23; JAOG Decl. ¶¶ 4, 7-13; Doe Decl. ¶¶ 7, 18. All face severe, potentially fatal health consequences if they lose access to treatment. KP Decl. ¶¶ 21-22, 27-28; NR Decl. ¶ 28; FF Decl. ¶¶ 11, 19-22; JAOG Decl. ¶ 23; Doe Decl. ¶ 19.

For example, Plaintiffs N.R. and K.P., are a husband and wife, both seeking asylum and living with HIV in Idaho with their 18-month-old U.S. citizen daughter. *See* KP Decl. ¶¶ 2-7, 9-10, 17; NR Decl. ¶¶ 1, 3, 11, 28, 29. They fear that H.B. 135 will deprive them of life-saving ART. KP Decl. ¶¶ 17-27; NR Decl. ¶¶ 1, 3, 11, 28, 29. N.R. and K.P. receive ART through the federal Ryan White funding at Full Circle Health in Idaho. KP Decl. ¶¶ 17-19; NR Decl. ¶¶ 21. They are unsure if their statuses as asylum-seekers with temporary work permits qualify as lawful presence for purposes of the new law. *See* KP Decl. ¶¶ 11-13; NR Decl. ¶ 17. Because she was able to access ART, K.P. did not transmit HIV to her daughter during pregnancy. KP Decl. ¶ 22. Without access to her medication, K.P.'s health would deteriorate significantly. KP Decl. ¶ 27. For N.R., losing access to ART because of H.B. 135's status verification requirement would be "fatal[.]" NR Decl.

¶ 28. This medication is "everything" for them to "be with [their] daughter and watch her grow." *See* KP Decl. ¶ 27.

## III.  <u>LEGAL STANDARD</u>

A temporary restraining order ("TRO") is intended to keep things as they are until the court can decide whether a preliminary injunction is warranted. *All. for Wild Rockies v. Higgins*, 690 F. Supp. 3d 1177, 1185 (D. Idaho 2023). A preliminary injunction's primary function is to maintain the status quo *ante litem*, preserving the positions of the parties and preventing irreparable harm while the merits of the underlying dispute are adjudicated. *See Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014); *Hubbard v. City of San Diego*, No. 24-4613, 2025 WL 1572736, at *7 n.10 (9th Cir. June 4, 2025). The standard for obtaining a TRO and a preliminary injunction is identical. *Higgins*, 690 F. Supp. 3d at 1185.

To prevail on a motion for a TRO or a preliminary injunction, the moving party must make a showing of four elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Hubbard*, 2025 WL 1572736, at *4. The likelihood of success on the merits is the most important factor. *Id*. When the government opposes injunctive relief, the balance of equities and public interest factors merge. *Id*. at *7.

Courts in the Ninth Circuit apply a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (*citing All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Thus, an injunction is proper where there are "serious questions going to the merits" and the balance of hardships "tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

IV.    **ARGUMENT**

The facts in this case warrant a TRO and preliminary injunction. The requested relief would merely preserve the status quo while the litigation proceeds, imposing minimal burden on Defendants. By contrast, denying relief would immediately and irreparably disrupt Plaintiffs' access to essential life-saving health care, causing severe and irreversible harm. The resulting gaps in care could lead to significant and fatal health consequences, exacerbate suffering, and place lives at risk—harms that are not remediable after the fact.

**A.    Plaintiffs Are Likely to Succeed on the Merits: H.B. 135 is Preempted.**

Plaintiffs are likely to succeed on the merits because H.B. 135 is preempted under the doctrines of field preemption or conflict preemption, either of which is sufficient to warrant preserving the status quo. First, the state cannot regulate, limit access, supplant, or otherwise impose its own "lawfully present" verification requirements for people eligible for or enrolled in the federally-funded Ryan White benefit programs in Idaho. To do so would be in conflict with federal law and violate the Supremacy Clause of the U.S. Constitution: PRWORA "defines the full scope of permissible state legislation in the area of regulation of government benefits and services to aliens." *League of United Latin Am. Citizens v. Wilson*, 997 F. Supp. 1244, 1255 (C.D. Cal. 1997); U.S. Const. Art. VI, cl. 2; *see also Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 735 (D. Ariz. 2020) (concluding that the city's immigration eligibility restrictions for federally funded public benefits that are exempt from restriction under PRWORA were preempted).

Second, H.B. 135's amendments conflict with the express language of PRWORA at 8 U.S.C. § 1611(b)(1)(C), and federal policies and procedures governing verification and access to

public benefits. The bill serves as an obstacle to the federal objectives of PRWORA and the Ryan White Program.

1.    **Congress Has Preempted the Field of Immigration Status Requirements for Public Benefits.**

Congress has the power to preempt state laws under the Supremacy Clause. U.S. Const. Art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Gibbons v. Ogden*, 22 U.S. 1, 210-11 (1824). It may do so by an express statement, *see, e.g.*, *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011), or through implication. The doctrine of field preemption precludes states "from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (internal citations omitted). "The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (cleaned up).

The dominance of the federal interest in immigration and immigration status is well established. *Id.* at 394 ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."); *see also Nwauzor v. GEO Grp.*, 127 F.4th 750, 778 (9th Cir. 2025) ("Few areas of the law are as exclusively within the domain of the federal government as immigration."). PRWORA's comprehensive federal framework governing access to categories of public programs based on beneficiaries' immigration status and demarcating clear and limited areas where States may legislate in accordance with those standards reflects its intent to displace state law. PRWORA thus occupies the field, establishing a complete system for determining immigrants' eligibility for public benefits with no room for States to legislate outside

of clearly defined areas. *See, e.g.*, *League of United Latin Am. Citizens*, 997 F. Supp. at 1255 (PRWORA "defines the full scope of permissible state legislation in the area of regulation of government benefits and services to aliens."); *Poder*, 506 F. Supp. 3d at 735 (concluding that a city's immigrant eligibility restrictions for federally-funded public benefits exempted from restriction under PRWORA were preempted); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 605 (E.D. Va. 2004) ("[I]t does appear that Congress has pre-empted the field of determining alien eligibility for certain public benefits, including even state benefits."); *cf. Korab v. Fink*, 797 F.3d 572, 581 (9th Cir. 2014) ("Considering the Welfare Reform Act as a whole, it establishes a uniform federal structure for providing welfare benefits to distinct classes of aliens.").

While PRWORA restricts immigrant eligibility for certain "federal public benefits," that term does not include all federal programs and Congress provided several explicit exemptions to those eligibility restrictions. *See* 8 U.S.C. §§ 1611(b), (c)(2). The U.S. Attorney General and HHS have previously confirmed that the Ryan White Program does not provide federal public benefits under 8 U.S.C. § 1611—the federal definition which Idaho Code references in §§ 67-7902, 67-7903. Ryan White Program services were not included in HHS's Aug. 4, 1998 list of federal public benefits and the U.S. Attorney General confirmed over 25 years ago that "HHS programs not listed in the notice, such as . . . programs under the Ryan White CARE Act . . . , do not meet the statutory definition of 'federal public benefit' and therefore do not have to verify the citizenship or immigration status of applicants or recipients under PRWORA." 66 Fed. Reg. 3613-02. Idaho state authorities simply do not have the authority to impose state verification requirements on federally-funded Ryan White benefits where such status verification requirements do not otherwise exist and are not otherwise permitted under PRWORA or the Ryan White CARE Act.

H.B. 135 as implemented by Defendants impermissibly seeks to regulate access to certain public benefits based on immigration status, a field which is dominated by PRWORA and the uniform federal interest in the movement and classification of noncitizens. *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017) (describing an "overwhelming dominant interest" in the "entry, movement, and residence of [noncitizens] within the United States[.]"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1026 (9th Cir. 2013); *see also Lozano v. City of Hazleton*, 724 F.3d 297, 316 (3rd Cir. 2013) ("We agree with the Eleventh Circuit and other courts that have held that 'the federal government has clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States and the breadth of these laws illustrates an overwhelmingly dominant federal interest in the field." (*quoting Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1266 (11th Cir. 2012))). Thus, H.B. 135's verification requirements placed on Ryan White funding are field-preempted.

### 2.    H.B. 135 Conflicts with Federal Law and Is Preempted.

Congress may also displace state law through implication where there is a conflict between the state and federal laws under the doctrine of conflict preemption. *See Arizona*, 567 U.S. at 399. Conflict preemption can occur in two circumstances. First, state law is preempted where "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963). Second, state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). A state law is preempted where "the record [ ] fairly support[s] 'an irreconcilable conflict' between federal and state law." *Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 623 (9th Cir. 2024) (*quoting Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982)).

H.B. 135 presents an irreconcilable conflict with federal law where it purports to require verification for programs that are expressly exempt from verification requirements. The Ryan White Program is not a federal public benefit as defined under 8 U.S.C. § 1611(c), and, even if it were, it would fall within the exemption for public health assistance programs that provide testing and treatment of communicable disease symptoms. *See* 8 U.S.C. § 1611(b)(1)(C). Nor do these federally-funded programs provide state or local public benefits. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1099 n.4 (9th Cir. 2012) ("[A] federally funded benefit is still considered a 'federal public benefit' even if administered by a state or local agency."); *accord Poder*, 506 F. Supp. 3d at 731. Moreover, H.B. 135 stands as an obstacle to the execution of Congress's purpose in creating the Ryan White Program. *See* 42 U.S.C. § 300ff (describing the purpose of the Ryan White CARE Act as "mak[ing] financial assistance available to States and other public or private nonprofit entities to provide for the development, organization, coordination and operation of more effective and cost efficient systems for the delivery of essential services to individuals and families with HIV disease."). Congress's purpose cannot be fully executed if eligible individuals living with HIV are unable to access treatment because of an unlawful state verification requirement.

The Ryan White Program is unequivocally governed by federal law. Idaho lacks authority to impose its own restrictions based on alienage or immigration status in these programs. *C.f.* 8 U.S.C. § 1642(b) ("[A] State that administers a program that provides a Federal public benefit shall have in effect a verification system that complies with the regulations.").

Under federal law, the Ryan White Program remains available regardless of alienage or immigration status nationwide, yet under Idaho state law, proof of immigration status is required. The state's eligibility restriction for these programs presents an irreconcilable conflict with PRWORA's clear statutory and regulatory scheme. Congress, through PRWORA, expressly

ensured that certain basic benefits remain available regardless of alienage or immigration status by exempting immigration status eligibility and verification requirements for these benefits. *See* 8 U.S.C. § 1611(b). H.B. 135's express deletion of "or where exempted by federal law" and "[f]or public health assistance for immunizations with respect to immunizable diseases and testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease," at Idaho Code §§ 67-7903(1) and 67-7903(3)(d), withdraws essential life-saving care from some of Idaho's most at-risk residents. It is therefore in direct conflict with the federal exemptions codified at 8 U.S.C. § 1611(b)(1)(C) and federal policies and procedures at 63 Fed. Reg. 41658, 66 Fed. Reg. 3613-02, and HRSA PCN 21-02. By withdrawing access to essential life-saving care from some of Idahoans living with HIV, H.B. 135 expressly conflicts with and undermines the federal statutory scheme, violating the Supremacy Clause of the U.S. Constitution.

**B.    Plaintiffs Will Suffer Irreparable Injury Absent a Temporary Restraining Order and Injunction.**

Plaintiffs and similarly situated individuals will suffer immediate and irreparable injury if H.B. 135 is permitted to take effect. The law's restrictions on access to life-saving medications and treatment will result in the swift and severe decompensation of the health of Idahoans living with HIV in direct conflict with federal law and priorities.

Because of the highly effective treatments provided through the Ryan White Program, "HIV is no longer a death sentence." *See* Dkt. 2-2, Dr. Davids Decl. ¶ 39. If the Patient Plaintiffs and proposed class members lose access to their HIV treatment, "the impact on their health will be devastating." *Id.* ¶ 39; *see generally id.* ¶¶ 37-45. Loss of treatment will allow for the "universally fatal" progression of the disease to AIDS and increase their risk "for infections,

cancer, heart attacks, and strokes[,]" including "highly deadly infections . . . like pneumocystis pneumonia, cryptococcal meningitis, Kaposi sarcoma, mycobacterium avium complex, cytomegalovirus, toxoplasmosis, and visceral leishmaniasis[.]" *Id.* ¶ 39, 40. Treatments provided through Ryan White also prevent transmission of HIV, including transmission to children through pregnancy, meaning that withdrawal of care endangers the Patient Plaintiffs' health and the health of the general population. *See id.* ¶ 43-45. The Patient Plaintiffs rely on Ryan White funding to access treatment; absent an injunction, they will be unable to verify lawful presence and lose access to treatment necessary to preserve their lives and protect others from the spread of HIV. *See* KP Decl., *passim*; NR Decl., *passim*; FF Decl., *passim*; JAOG Decl., *passim*; Doe Decl., *passim*.

The Ninth Circuit and other courts have routinely recognized that the loss or reduction of critical public benefits constitutes irreparable harm, as these injuries cannot be remedied by monetary damages or restored after the fact. *E.g.*, *City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020). Reductions in public health benefits that immediately endanger beneficiaries, causing deterioration of health and increased risk of hospitalization, are harms that cannot be compensated or reversed. *See M.R. v. Dreyfus*, 663 F.3d 1100, 1114-16 (9th Cir. 2011), *amended on other grounds*, 697 F.3d 706 (9th Cir. 2012) ("[T]he reduction or elimination of public medical benefits is sufficient to establish irreparable harm to those likely to be affected by the program cuts.").

The risk is not speculative. Even temporary gaps in care can lead to "pain, infection, amputation, medical complications, and death due to delayed treatment." *Id.* at 1110 (*quoting Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004)). H.B. 135's elimination of longstanding exceptions for those seeking treatment for communicable diseases will have severe consequences, including increased rates of preventable illness. *See City & Cnty. of San Francisco*,

981 F.3d at 762–63 (recognizing that loss of Medicaid and nutrition benefits leads to adverse health outcomes for both individuals and the broader community). For these reasons, Plaintiffs have a clear and compelling case that they—and the public at large—will suffer irreparable injury absent a TRO and preliminary injunction. Such harm warrants immediate equitable relief to preserve the status quo and prevent the denial of essential, life-sustaining services.

**C.    The Balance of Equities and Public Interest Supports a Temporary Restraining Order and Injunction.**

Courts have consistently held that the risk of irreparable harm to individuals—such as loss of medical care, risk of hospitalization, or deterioration of health—far outweighs any temporary administrative or fiscal inconvenience to the government. *See M.R.*, 663 F.3d at 1119-20 ("[T]he balance of hardships favors beneficiaries of public assistance who may be forced to do without needed medical services over a state concerned with conserving scarce resources."); *City & Cnty. of San Francisco*, 981 F.3d at 762 (harm to individuals and communities from loss of benefits is immediate and irreparable, while government harm "will amount to no more than a temporary extension of the law previously in effect for decades"). Granting a preliminary injunction imposes, at most, a minimal burden on the state, as it merely preserves existing policies while the merits are adjudicated. *See City & Cnty. of San Francisco*, 981 F.3d at 762. Here, continued access to HIV/AIDS treatment is critical to preserving the health of Patient Plaintiffs and the proposed class members as well as the public at large. *See* Dr. Davids Decl. ¶¶ 37-45. Discontinuation of Ryan White benefits increases the risks of HIV transmission and endangers public health. *Id.*

The public interest is best served by preserving access to health care for those most in need. The Ninth Circuit has recognized a "robust public interest in safeguarding access to health care for . . . 'the most needy in the country.'" *M.R.*, 663 F.3d at 1119 (*quoting Indep. Living Ctr. of S. Cal.*,

*Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009)). Maintaining the status quo through injunctive relief prevents abrupt policy changes that would disrupt care, endanger public health, and undermine legislative priorities. *See City & Cnty. of San Francisco*, 981 F.3d at 762-63. Thus, the balance of equities and the public interest overwhelmingly support injunctive relief in this case, where access to essential health care for vulnerable populations is at stake.

### D.    The Court Should Issue Relief to a Provisionally Certified Class.

Plaintiffs have concurrently filed a motion for class certification establishing their compliance with the requirements of Rule 23. *See* Dkt. 3-1, Pls.' Mem. ISO Mot. for Class Certification. They incorporate those arguments here and request the Court grant relief to a provisionally certified class. *See id.* Provisional class certification is both appropriate and necessary at this stage to ensure that all similarly situated individuals receive the benefit of uniform relief and to prevent inconsistent or fragmented adjudication. *See, e.g.*, *Betschart v. Oregon*, 103 F.4th 607, 615 (9th Cir. 2024) (affirming relief issued to provisionally certified class); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (class certification and preliminary injunction are "in service of" one another and should be considered together); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (approving class certification for injunctive relief to ensure all affected individuals are protected); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-43 (9th Cir. 2012) (affirming provisional class certification and preliminary injunction); *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (provisional certification "routinely" granted for injunctive relief), *aff'd*, 501 F. App'x 713 (9th Cir. 2012); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *19 (D. Idaho Apr. 29, 2025) (enjoining a state immigration regulation as to two provisionally certified classes). Moreover, provisional certification at this stage preserves the

Court's flexibility to revisit or modify the class definition as the case develops, ensuring that the relief remains tailored and equitable. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").

### E. Bond Should Be Waived.

The Court should waive the bond requirement because Plaintiffs have limited financial means and are pursuing claims that serve the public interest. *See Idaho Org. of Res. Councils*, 2025 WL 1237305 at *15. District courts have broad discretion to dispense with or require only a nominal bond in public interest litigation, particularly where requiring security would effectively deny access to judicial review. *E.g.*, *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest litigation"); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (upholding nominal $1,000 bond for a class of aliens with "unremarkable financial means," despite the government's assertion of substantial costs); *Diaz*, 656 F.3d at 1015 (affirming decision to require no bond in a case enjoining the state from terminating healthcare benefits for same-sex partners).

Waiving or minimizing the bond is especially compelling where, as here, Plaintiffs seek to enjoin unconstitutional conduct by a governmental entity. Imposing a substantial bond in such cases would "effectively deny access to judicial review," *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985). The public interest in vindicating constitutional rights and ensuring access to the courts strongly favors waiving the bond requirement. *Save Our Sonoran*, 408 F.3d at 1126; *Barahona-Gomez*, 167 F.3d at 1237. Because Plaintiffs (including putative class members) are of limited means, are advancing the public interest, and seeking redress for unconstitutional government

action, the Court should exercise its discretion to waive the Rule 65(c) bond requirement in its entirety.

## V.    **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction and issue relief as to a provisionally certified class.

Dated: June 26, 2025                                   Respectfully submitted,

                                                                    */s/ Emily Myrei Croston*
                                                                    Emily Myrei Croston (ISB No. 12389)
                                                                    ACLU of Idaho Foundation

## CERTIFICATE OF SERVICE

I CERTIFY that on June 26, 2025, I served a copy of the foregoing documents by electronic mail to the following person, who has agreed to accept service on behalf of all defendants:

James Craig, Division Chief
Civil Litigation and Constitutional Defense
Office of the Idaho Attorney General
700 W. Jefferson Street
Boise, ID 83720-0010
James.craig@ag.idaho.gov

Dated: June 26, 2025                              Respectfully submitted,

                                                 */s/ Emily Myrei Croston*
                                                 Emily Myrei Croston (ISB No. 12389)
                                                 ACLU of Idaho Foundation