UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABBY DAVIDS, M.D.; K.P.; N.R.; F.F.; J.A.O.G.; JOHN DOE; ,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALEX J. ADAMS, in his official capacity as Director of the Idaho Department of Health and Welfare; MIREN UNSWORTH, in her official capacity as the Deputy Director of IDHW in charge of Health & Human Services; ELKE SHAW-TULLOCH, in her official capacity as the administrator of IDHW's Division of Public Health; ANGIE BAILEY, as the Director of the Idaho Bureau of Rural Health & Primary Care; and RAUL LABRADOR, in his official capacity as the Attorney General of Idaho,<br><br>    Defendants. | Case No. 1:25-cv-00334-AKB<br><br>**EX PARTE TEMPORARY RESTRAINING ORDER** |

      Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order (TRO) (Dkt. 2). Plaintiffs seek emergency temporary injunctive relief to prevent the implementation and enforcement of Idaho House Bill No. 135 (H.B. 135) to the extent it imposes immigration status verification requirements for benefits under the Ryan White Comprehensive AIDS Resources Emergency (CARE) Act and the subsequent Ryan White HIV/AIDS Treatment Extension Act of 2009 (Ryan White Program or Program), which provides medications to low-income people with the human immunodeficiency virus (HIV), who otherwise lack the means to obtain the treatment (Dkt. 2-1 at 8). For the reasons discussed below, the Court grants Plaintiffs' request for a TRO.

**EX PARTE TEMPORARY RESTRAINING ORDER - 1**

I.  INTRODUCTION

Idaho administers the federally-funded Ryan White Program, which provides "critical medical care and medications to low-income people living with HIV who lack other means of obtaining treatment" (Dkt. 2-1 at 8). Its purpose is "to provide emergency assistance to localities disproportionately affected by the HIV epidemic and to make financial assistance available to develop, organize, coordinate, and operate a more effective and cost efficient system for the delivery of essential services to individuals and families with HIV." *AIDS Healthcare Found. v. Dep't of Pub. Health*, 17 Wash. App. 2d 2014 (2021), 2021 WL 1535452, at *1 n.1 (citing 42 U.S.C. § 300ff).

Idaho's Governor signed H.B. 135 on April 3, 2025, and it becomes effective on July 1. Plaintiffs allege that the Idaho Department of Health and Welfare (IDHW) intends to rely on H.B. 135 "to impose immigration status verification requirements on beneficiaries of certain federally-funded public programs," including the Ryan White Program (Dkt. 1 at 3). Further, they allege that "[b]efore H.B. 135, immigration status did not render patients ineligible for the [P]rogram" and that they "will be unable to provide proof of immigration status sufficient to receive federally-funded [services]" under the Program (*id.* at 3; *id.* at ¶ 19).

Challenging H.B. 135, Plaintiffs allege three claims under 42 U.S.C. § 1983, including that H.B. 135 violates the Supremacy Clause, the Due Process Clause, and the Equal Protection Clause. Plaintiffs include Dr. Abby Davids, M.D., who is a "broad-spectrum family physician" who treats "newly arrived immigrants and refugees living with HIV" (Dkt. 1 at ¶ 9), and five aliens[1] who are present in the United States without authorization, including K.P., N.R., F.F., J.A.O.G., and John

---

[1]   Because the statute at issue uses the term "alien," the Court likewise uses this term to avoid confusion. *See generally* 18 U.S.C. 1641 (using term in definition of "qualified alien").

Doe (Patient Plaintiffs).[2] Plaintiffs' complaint alleges that Patient Plaintiffs are HIV positive and currently receiving treatment under the Ryan White Program. Specifically, it alleges that they are each currently receiving life-saving antiretroviral therapy (ART); their ART medications are refilled every thirty days; and they must "re-enroll" in the Program every six months (*see, e.g.*, Dkt. 1 at ¶¶ 36, 47, 56, 69, 77).

In support of their claim that H.B. 135 violates the Supremacy Clause, Plaintiffs rely on the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 U.S.C. §§ 1601-1646. In support of the Supremacy Clause claim, they make two preemption arguments: First, they argue Congress preempted the entire field of public benefits available to aliens (Dkt. 2-1 at 18-20). Second, they argue that H.B. 135 stands as an obstacle to achieving the goals of the PRWORA and presents an irreconcilable conflict regarding verifying alien status (*id.* at 20-22).

Defendants[3] include Alex Adams, IDHW's Director; Miren Unsworth, IDHW's Deputy Director in charge of Health and Human Services; Elke Shaw-Tulloch, IDHW's administrator of the Division of Public Health; Angie Bailey, the Director of the Idaho Bureau of Rural Health and Primary Care; and Raul Labrador, Idaho's Attorney General. Although IDHW informed Dr. Davids on April 16, 2025—shortly after H.B. 135 was signed—that it may require its Ryan White Program case managers "to verify the immigration status of patients accessing HIV treatment," Plaintiffs did not file this action and seek injunctive relief until several months later at approximately 8:00 p.m. on June 26—only two business days before the July 1 effective date. Given this

---

[2] Plaintiffs are identified in the complaint and other filings only by their initials (*see, e.g.*, Dkt. 1). They have filed a motion to proceed using pseudonyms (Dkt. 5). That motion, however, is not yet ripe.

[3] Plaintiffs sue all the defendants in their official capacities.

EX PARTE TEMPORARY RESTRAINING ORDER - 3

extraordinarily truncated and expedited schedule, Defendants have not had an opportunity to respond to Plaintiffs' request for injunctive relief.

## II. LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain injunctive relief before final judgment in certain limited circumstances. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); Fed. R. Civ. P. 65. Both are extraordinary remedies that should be awarded only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. 7, 22 (2008). A key difference between a TRO and a preliminary injunction is a TRO's duration. A TRO typically does not last for more than fourteen (14) days without good cause, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018). Thus, the consideration required by a TRO determination is not meant to replace the "thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Oby v. Clear Recon Corp.*, 2016 WL 3019455, at *1 (E.D. Cal. May 26, 2016).

For either, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. 7; *Leitter v. Armstrong*, No. 1:10-CV-361-BLW, 2010 WL 3735674, at *2 (D. Idaho Sept. 15, 2010) *citing Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). When the government is a party, the factors regarding public interest and equities

merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The movant must carry her burden "by a clear showing." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

The Court may apply a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011)). Under this approach, an injunction is proper where "serious questions going to the merits" and a hardship balance "tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Wild Rockies*, 632 F.3d at 1132; *see also N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024). *Id.* A "serious question" is one that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

A preliminary injunction can take two forms. The first, a "prohibitory" injunction, logically "prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks and citation omitted). In contrast, a "mandatory" injunction, "goes well beyond simply maintaining the status quo [ ] and is particularly disfavored" because it "orders a responsible party to take action." *Id.* at 879. The relevant "status quo" for purposes of an injunction "refers to the legally relevant relationship *between the parties* before the controversy arose." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis in original); *see also Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514

(9th Cir. 1984) (for purposes of injunctive relief, the status quo means "the last uncontested status which preceded the pending controversy") (cleaned up).[4]

Finally, the Court recognizes "a Plaintiff's ability to demonstrate a likelihood of success on the merits, or serious question going to the merits, is the most important element of a preliminary injunction." *Roe by & through Roe v. Critchfield*, 2023 WL 5146182, at *4 (D. Idaho Aug. 10, 2023) (cleaned up). This showing, however, is only *preliminary* because the parties have typically not engaged in any discovery by the time a plaintiff files a preliminary injunction motion. A TRO that precedes a preliminary injunction is even more removed from the case's merits and substance *Id.* In other words, a plaintiff's request for a TRO asks the Court "to make a pre-preliminary call on the prospects of Plaintiffs' claims." *Id.*

### III.    ANALYSIS

**1. Likelihood of Success on the Merits**

Plaintiffs[5] allege H.B. 135 violates the Supremacy Clause, Art. VI, Section 2, of the U.S. Constitution "because it attempts to regulate matters that are exclusively reserved to the federal government"; "because it operates in a field over which Congress has exercised exclusive authority"; and "because it conflicts with federal laws and denies federal funds to those eligible under federal law" (Dkt. 1 at ¶¶ 119-20). The Supremacy Clause provides a clear rule that federal

---

[4]     *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) ("The status quo to be preserved by a preliminary injunction [] is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy.") (cleaned up); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (cleaned up).

[5]     As an initial matter, Patient Plaintiffs allege and appear to have standing to assert their challenges to H.B. 135.

law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Law of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Under this principle, Congress has the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

"[T]he source of preemption in the immigration context is unique." *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017). The federal government derives its authority to regulate aliens' status from various sources including its power to a establish a uniform rule of naturalization, its power to regulate foreign commerce, and its broad authority over foreign affairs. *Id.* As the Ninth Circuit has noted, "Supreme Court precedent explains that 'neither a clear encroachment on exclusive federal powers nor a clear conflict with a specific congressional purpose is required' for federal law to preempt a state's regulation of immigrants." *Id.*

Plaintiffs raise two preemption arguments here: conflict preemption and field preemption.[6] Under field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. Field preemption occurs when a federal interest is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" or when "a framework of regulation is so pervasive . . . that Congress left no room for the States to supplement it." *Id.* "Where Congress occupies an entire field . . . even complementary state

---

[6] Preemption categories "are not rigidly distinct." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (1988)); *see also Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1050-51 (7th Cir. 2013) ("When Congress occupies an entire field, one might also say that Congress has set forth a purpose and objective of controlling an entire field of regulation. In this way the purposes and objectives subcategory of conflict preemption merges with field preemption.").

**EX PARTE TEMPORARY RESTRAINING ORDER - 7**

regulation is impermissible." *Id.* at 401. "Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Id.*

Under conflict preemption, state laws are preempted "when they conflict with federal law." *Id.* at 399. A preemptive conflict occurs when "compliance with both federal and state regulations is a physical impossibility" or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Id.* (internal quotations omitted). The "conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress," *Kansas v. Garcia*, 589 U.S. 191, 202 (2020), not from a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011).

Plaintiffs' conflict preemption argument is that treatment for HIV is permissible without immigration status verification because HIV is a communicable disease and the PRWORA expressly exempts services for treatment of symptoms of communicable diseases from the rule that aliens who are not "qualified aliens" are ineligible for Federal public benefits. *See* 8 U.S.C. § 1611(b)(1)(C). According to Plaintiffs, H.B. 135's failure to incorporate this same exemption impermissibly conflicts with federal law concerning alien benefit eligibility. Because the PRWORA is an explicit exercise of federal immigration regulatory power, Plaintiffs argue that it broadly preempts all conflicting state laws.

Plaintiffs' field preemption argument is that federal law preempts IDHW's interpretation of H.B. 135. Specifically, they argue the Ryan White Program is not a public benefit at all and that requiring verification for its benefits stands as an obstacle to the Program's stated objective, which is to create an effective and efficient system to deliver treatment to individuals with HIV. In other

**EX PARTE TEMPORARY RESTRAINING ORDER - 8**

words, Congress passed the PRWORA to uniformly govern the ability of aliens nationwide to access public benefits, but the Ryan White Program is not a qualifying public benefit.

Plaintiffs, however, do not clearly articulate the federal law with which H.B. 135 purportedly conflicts if the Ryan White Program is not a federal public benefit. Instead, they assert it violates a federal scheme comprised of the PRWORA, 63 Fed. Reg. 41658, 66 Fed. Reg. 3613-02, and HRSA PCN 21-02 (Dkt. 2-1 at 22). Plaintiffs assert that those federal authorities construed together are evidence of a congressional framework where only public benefits require verification and governing agencies have the authority to determine which of their programs are public benefits. Under this framework, Plaintiffs argue the Program is not a public benefit which requires verification of lawful status.

Plaintiffs rely on several cases to support their field preemption argument (*id.* at 19) citing *League of United Latin Am. Citizens v. Wilson*, 997 F. Supp. 1244, 1255 (C.D. Cal. 1997), *Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 735 (D. Ariz. 2020), *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 605 (E.D. Va. 2004) and *Korab v. Fink*, 797 F.3d 572, 581 (9th Cir. 2014). Those cases generally support a finding of preemption here, and *Korab* identifies the limited discretion that states have to set qualifications for *state* public benefits under 8 U.S.C. § 1622. *Korab*, 797 F.3d at 576; *see also* 8 U.S.C. §§ 1621(d) (noting states can grant "illegal aliens" state public benefits) and 1625 (noting states can require proof of eligibility for state public benefits). Based on this analysis, there is a serious question regarding whether H.B. 135 is preempted on its face because it incorporates the PRWORA's ban on providing public benefits to unqualified aliens but does not likewise incorporate the many carefully identified exceptions to that ban, including for treatment of communicable diseases.

**EX PARTE TEMPORARY RESTRAINING ORDER - 9**

Moreover, the PRWORA obligates the federal government to promulgate rules to verify who is a "qualified alien" for purposes of both federal and state public benefits. 8 U.S.C. § 1642(a)(1), (3). It clearly provides that "not later than 90 days after August 5, 1997, the Attorney General shall promulgate regulations <u>which set forth the procedures by which a State or local government can verify whether an alien applying</u> for a <u>State or local</u> public benefit is a qualified alien . . . for purposes of determining whether the alien is ineligible for benefits under section 1621 of this title." *Id.* at (a)(3) (emphasis added). Thus, even if the Ryan White Program benefits were somehow a *state* public benefit, its verification procedures would have to be authorized by federal law and could not contradict the PRWORA. 8 U.S.C. § 1642(b). The State's role is to adopt conforming regulations and a serious question exists whether H.B. 135 conforms.

Whether the Ryan White Program is a public benefit (state *or* federal), then, is analytically important to resolving Plaintiffs' motion. If it is either, then the PRWORA governs, and H.B. 135 cannot add to the PRWORA's requirements. If it is not a public benefit, however, then neither the PRWORA nor H.B. 135 apply by their own terms. In that scenario, the Court considers Plaintiffs' alternative argument that IDHW's interpretation of H.B. 135's incorporated federal definition of "federal public benefit" conflicts with the federal scheme providing treatment benefits to aliens with HIV. Under 8 U.S.C. § 1611(a) and (b)(1)(D), the United States Attorney General, after consulting with appropriate agencies, has "sole and unreviewable" discretion to exempt federally provided benefits from the statutory definition of federal public benefit. Plaintiff argues that the Attorney General, over two decades ago, took the position that whether a federal program is a federal public benefit is to be determined by the benefit granting agency (*see* Dkt. 2-1 at 19).

The Department of Health and Human Services (HHS) is the federal agency which oversees the Ryan White Program. It promulgated a list of its programs which constitute federal

**EX PARTE TEMPORARY RESTRAINING ORDER - 10**

public benefits, and the Ryan White Program is *not* one of the listed programs. *See* 63 Fed. Reg. 41658 (not identifying Ryan White Program); *see also* 66 Fed. Reg. 3613 (attorney general noting same with approval). The DOJ explained that "HHS advise[d] that HHS programs not listed in the notice, such as Community Health Centers, and HHS programs under the Ryan White CARE Act and the Older Americans Act, do not meet the statutory definition of 'federal public benefit' and therefore do not have to verify the citizenship or immigration status of applicants or recipients under PRWORA." 66 Fed. Reg. 3613. The DOJ reasoned that "a benefit targeted to certain populations based on their characteristics . . . is *not* a federal public benefit." 63 Fed. Reg. 41658 at 41660. In short, it appears that funding for states to provide services to "target a population" is generally different than funding awarded directly to an "individual, household, or family eligibility unit."

As a result, longstanding, governing agency guidance directly contradicts IDHW's interpretation that the Ryan White Program is a federal public benefit. Accordingly, if H.B. 135 becomes effective and IDHW enforces its alleged interpretation of H.B. 135, that action would impede the efficacy of Congress' goals under the Ryan White Program, the PRWORA's scope, and HHS' guidance. At this early stage, the Court finds that Plaintiffs are likely to establish that the Ryan White Program is not a state or federal public benefit, as defined; there is no federal requirement of immigration status verification to receive benefits under the Program; and Idaho lacks the ability to impose such a verification requirement on aliens to receive benefits because Congress has the exclusive power to regulate immigration. Further, Congress' decision not to require such verification likely carries preemptive weight against all laws in conflict. *See Idaho Org. of Res. Councils v. Labrador*, 2025 WL 1237305, at *11 (D. Idaho Apr. 29, 2025). Accordingly, the Court finds serious questions exist whether H.B. 135 is preempted and whether

**EX PARTE TEMPORARY RESTRAINING ORDER - 11**

IDHW's interpretation of it stands as an obstacle to the accomplishment of the Ryan White Program's objective of "provid[ing] emergency assistance to localities disproportionately affected by the [HIV epidemic] and to make financial assistance available . . . for the delivery of essential services to individuals and families with HIV disease." 42 U.S.C. § 300ff.

2. **Irreparable Harm**

The Court also finds Patient Plaintiffs have demonstrated imminent irreparable harm for purposes of a TRO.[7] Specifically, K.P. only receives a thirty-day supply of medication, will require a refill on July 8, 2025, and H.B. 135 goes into effect before then on July 1 (Dkt. 2-8, ¶ 25). The Court cannot resolve the parties' dispute by July 8. Further, other Patient Plaintiffs are somewhat similarly situated because they undoubtedly will require refills before the Court has adequate time to resolve this dispute, and all of them must re-enroll in the program every six months. (Dkt. 2-9, ¶ 36; Dkt. 2-10, ¶ 17; Dkt. 2-11, ¶ 21; Dkt. 2-12, ¶ 16). Further, Dr. Davids treats at least one pregnant patient who, without her medication, will transmit HIV to her unborn child (Dkt. 2-2, ¶ 19). Without their medicine, Patient Plaintiffs' health will be irreparably harmed. They will be exposed to heightened risks of death, cancer, heart attack, and stroke. As Dr. Davids attests, Patient

---

[7] The legal authorities that Plaintiffs' request for emergency relief implicates are complicated. As the Supreme Court recently explained, a court risks "embarrass[ing] the future" when tackling challenging issues under an expedited schedule. *TikTok Inc. v. Garland*, 145 S. Ct. 57, 62-63 (2025) (citing *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 300 (1944)). The Court's analysis must be understood as narrowly focused under these circumstances. *Id.* Further, the Court cautions counsel against strategically delaying a request for emergency relief to truncate the Court's consideration of the issues. As already noted, Plaintiffs filed their motion for emergency relief at 8:00 p.m. on June 26, 2025, although H.B. 135 was signed into law more than two months earlier on April 5 and the IDHW notified Dr. Davids on April 16 that it may require immigration status verification once H.B. 135 becomes effective on July 1—two business days after Plaintiffs' request for emergency relief. Such a delay can tend to undercut the alleged urgent nature of a plaintiff's emergency request. *See, e.g., Bradt v. T-Mobile US, Inc.*, Case No. 19-cv-07752-BLF, 2020 WL 1809716, at *4 (N.D. Cal. Mar. 13, 2020)(denying injunctive relief where emergency was of Plaintiff's "own making"). A TRO's purpose is not to fix an emergency a plaintiff creates.

Plaintiffs' loss of access to their medication would be devastating (Dkt. 2-1 at 15). Because Plaintiffs are at risk of suffering irreparable injury to their health, the Court finds that this factor weighs in favor of granting injunctive relief. *M.R. v. Dreyfus*, 697 F.3d 706, 732 (9th Cir. 2012) ("We have several times held that beneficiaries of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny them needed medical care.") (internal quotations omitted).

### 3. Public Interest and Balance of Hardships

Finally, the Court finds the balance of equities and public interest favor injunctive relief. When the government opposes injunctive relief, "the third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). The balance of equities inquiry concerns the plaintiffs' burdens or hardships compared to the defendants' burden if the court orders the injunction. *Id.* Here, Patient Plaintiffs risk death. Meanwhile, the State risks continuing distribution of a benefit.

Analysis of the public interest mostly concerns the injunction's impact on nonparties. *Id.* The Court recognizes the strong public interest in Idaho in regulating both immigration and public benefits. There is also, however, an important public interest in treating all present and future recipients[8] of HIV treatment under the Ryan White Program; the consequences to Idahoans of these individuals losing access to their treatment and the impact that would have on Idaho; and applying the rule of law uniformly and consistently, especially in matters implicating nationwide

---

[8] Plaintiffs have moved for certification of a class of plaintiffs to include "all current and future persons who otherwise qualify for federally funded services through the Ryan White [Program] but will be unable to provide proof of immigration status sufficient to receive [those services]" (Dkt. 3-1 at 7). Defendants have not yet responded to that motion, and the Court has not yet had an opportunity to address it. Accordingly, this decision is limited to Patient Plaintiffs.

concerns such as illegal immigration and public benefits. On balance, the Court finds that the public interest and hardships tip strongly in Plaintiffs' favor, particularly because there are serious questions going to the merits of Plaintiffs' claims. Accordingly, the Court grants Plaintiffs' motion for a TRO.

### 4. Bond Requirement

Plaintiffs argue that the Court should waive the bond requirement under Rule 65(c) of the Federal Rules of Civil Procedure because they would otherwise effectively be denied relief given their meager means (Dkt. 2-1 at 26). Indeed, by design, the only persons who can receive the benefits of the Ryan White Program are in poverty. Meanwhile, the Court is presently unaware of any potential costs to Defendants. Accordingly, the Court finds that no bond is necessary and waives the requirement. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), *supplemented*, 236 F.3d 1115 (9th Cir. 2001) ("Absent any showing by defendants of cost, we cannot say the district court clearly abused its discretion in determining the bond amount.").

## IV.   ORDER

Accordingly, the Court hereby **ORDERS**:

1. Plaintiffs' Emergency Motion for Temporary Restraining Order is **GRANTED** (Dkt. 2). Specifically, the Court enters a TRO preserving the status quo by prohibiting Defendants and their officers, agent, employees, attorneys, and any person who is in active concert or participation with them from implementing or enforcing H.B. 135 to impose immigration status verification requirements on Patient Plaintiffs for benefits under the Ryan White Program.

2. This TRO shall remain in effect for **fourteen (14) days** until the Court holds a preliminary injunction hearing, which will occur on **July 15, 2025, at 1:00 p.m.**

**EX PARTE TEMPORARY RESTRAINING ORDER - 14**

3. The Court orders the following expedited briefing schedule on Plaintiffs' motion for preliminary injunction: Defendants response is due by **July 7, 2025**, and any reply is due by **July 11, 2025**.

4. The bond requirement under Rule 65(c) of the Federal Rules of Civil Procedure is **WAIVED**.

DATED: June 30, 2025

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge