Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Joanna Cuevas Ingram*
Kevin Siegel*
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 34573
Washington, D.C. 20043
Tel: (213) 639-3900
cuevasingram@nilc.org
siegel@nilc.org

Tanya Broder*
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd. No. 108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
broder@nilc.org

Seth D. Levy (ISB No. 10703)
Vincent C. Capati*
Jacqueline D. Relatores*
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000
slevy@nixonpeabody.com
vcapati@nixonpeabody.com
jrelatores@nixonpeabody.com

Brian J. Whittaker*
NIXON PEABODY LLP
799 Ninth Street, N.W., Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
bwhittaker@nixonpeabody.com

Nikki Ramirez-Smith (ISB No. 9030)
Casey Parsons (ISB No. 11323)
Neal Dougherty*
RAMIREZ-SMITH LAW
444 W. Iowa Ave.
Nampa, ID 83686
Tel: (208) 461-1883
nsmith@nrsdt.com
cparsons@nrsdt.com
ndougherty@nrsdt.com

*Attorneys for Plaintiffs (additional counsel identified on the following page)*
*Admitted pro hac vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ABBY DAVIDS, MD, *et al.*,<br>　　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>ALEX ADAMS, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*,<br>　　　　　*Defendants*. | Case No. 1:25-cv-00334-AKB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PROVISIONAL CLASS CERTIFICATION** |

Alvaro Cure Dominguez
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel: (312) 977-4400
acuredominguez@nixonpeabody.com

## I.    INTRODUCTION

This case is simple because Plaintiffs and Defendants agree in two important respects: (1) Ryan White[1] is not a state or local public benefit, *see* Dkt. 20 at 3 n.1, and (2) *if* Ryan White were a federal public benefit, it falls within 8 U.S.C. § 1611(b)(1)(C)'s exemption for testing and treatment of communicable disease symptoms, *see* Dkt. 20 at 13-14. The only remaining question is whether the State of Idaho can overrule PRWORA's explicit statutory exemption and impose its own immigration status requirements on the federal Ryan White Program. It cannot. Whether or not Ryan White is a federal public benefit, the State of Idaho has no power to overrule federal law or bar access to federal funds for qualifying participants.

## II.    ARGUMENT

### A.    Plaintiffs May Bring Their Preemption Claims in Equity

As a threshold matter, the State argues that Plaintiffs "have no ability to enforce a spending power public benefits program against Idaho officers absent a clear and unambiguous rights-creating provision in [42 U.S.C. § 1983]."[2] Dkt. 20 at 19. But the State overlooks the fact that Plaintiffs bring their preemption claims in equity. Dkt. 1 at ¶ 121.

Federal courts have "long-established authority to enjoin ongoing violation of federal law." *See Cayuga Nation v. New York State Gaming Comm'n*, No. 5:24-CV-537 (BKS/TWD), 2025 WL 959204, at *8-*9 (N.D.N.Y. Mar. 31, 2025) (referencing *Ex parte Young,* 209 U.S. 123 (1908)). Even where statutory private rights of action are unavailable, plaintiffs may still seek equitable relief to enjoin such violations. *Id.* (denying State's motion to dismiss claims for lack of private right of action to enforce claims where "State Defendants do not address whether the [plaintiffs] can proceed in equity jurisdiction"); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S.

---

[1] Plaintiffs refer to benefits under the Ryan White Comprehensive AIDS Resources Emergency (CARE) Act and the subsequent Ryan White HIV/AIDS Treatment Extension Act of 2009 as simply "Ryan White" or "the Ryan White Program."

[2] The State also cites to 28 U.S.C. § 1983, Dkt. 20 at 2, but this is assumed to be a typo and the correct statute is 42 U.S.C. § 1983.

320, 337–38 (2015) (Sotomayor, J., dissenting). Such equitable relief is generally available to plaintiffs, absent an intent from Congress to foreclose such equitable causes of action. *Armstrong*, 575 U.S. at 327–29; *see also Farmworker Ass'n of Fla., Inc. v. Uthmeier*, No. 23-CV-22655-RAR, 2025 WL 1133682, at *4 n.6 (S.D. Fla. Apr. 17, 2025) (collecting cases for the holding that "plaintiffs may invoke a federal court's equitable jurisdiction to enjoin the enforcement of a preempted state law").[3]

Here, no such Congressional intention to foreclose a cause of action in equity is evident in the statute. As such, and because the State failed to raise any objections to Plaintiffs' ability to bring their preemption claims in equity, Plaintiffs request for preliminary injunctive relief based on their preemption claim is appropriate.

### B.    Plaintiffs Are Likely to Succeed on the Merits: H.B. 135 Is Preempted

The Court does not need to address Defendants' arguments regarding whether or not Ryan White is a federal public benefit. As the Court found in its TRO order, in either case the State's actions here are preempted. *See* Dkt. 15 at 10 (finding that if Ryan White is a federal or state public benefit, "then the PRWORA governs, and H.B. 135 cannot add to the PRWORA's requirements"); *id.* at 11 (finding that if Ryan White is not a federal public benefit then H.B. 135 would still "impede the efficacy of Congress' goals under the Ryan White Program, the PRWORA's scope, and HHS' guidance").

Whether or not Ryan White is a federal public benefit,[4] the State's actions are field preempted because "Congress passed the PRWORA to uniformly govern the ability of aliens

---

[3] In *Medina v. Planned Parenthood S. Atlantic*, --- S. Ct. ---, No. 23-1275, 2025 WL 1758505 (U.S. June 26, 2025), the Court did not address whether the plaintiffs could proceed in equity.

[4] On July 10, 2025, HHS issued a notice expanding the programs that qualify as federal public benefits under 8 U.S.C. § 1611(c). It is not yet published in the federal register, but is available here:        https://www.hhs.gov/press-room/prwora-hhs-bans-illegal-aliens-accessing-taxpayer-funded-programs.html. That notice again does not identify Ryan White as providing federal public benefits. It also recognizes that even if a program is a "federal public benefit" it may be exempt from restriction, such as the exemption for testing and treatment of communicable disease

nationwide to access public benefits[,]" leaving no room for the State to impose its own barriers, *see id.* at 9, and conflict preempted because the State's actions pose an obstacle to the accomplishment of Congress's purposes in Ryan White.

Even accepting, *arguendo*, the State's characterization of Ryan White as a federal public benefit, Defendants do not dispute that Ryan White falls within exemption (C) of PRWORA. *See* Dkt. 20 at 14 ("The Ryan White Program falls under the third exception, § 1611(1)(C) [sic], regarding treatment of the symptoms of communicable diseases . . . ."); 8 U.S.C. § 1611(b)(1)(C). Thus, under this circumstance, not only are the State's actions field preempted because PRWORA governs access to public benefits for immigrants, they are also conflict preempted because they conflict with the federal statutory exemption listed explicitly in 8 U.S.C. § 1611(b)(1)(C).

Regardless of whether Ryan White is a "federal public benefit," it remains a federally-funded and federally-governed program designed for the treatment of HIV as a communicable disease. Congress's decision to exempt public health programs that treat symptoms of communicable diseases in § 1611(b)(1)(C) from its immigrant eligibility restrictions carries preemptive weight against all laws in conflict. Dkt. 15 at 11 (citing *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2025 WL 1237305, at *11 (D. Idaho Apr. 29, 2025)).

Defendants' only remaining argument is that the State of Idaho can overrule the explicit Congressional exemption in 8 U.S.C. § 1611(b)(1)(C) and impose its own immigration status requirements on the federally-funded Ryan White Program. But it cannot.

### 1. PRWORA Preempts the Field of Immigrants' Access to Public Benefits

In PRWORA, Congress set forth a pervasive federal scheme governing immigrants' access to public benefits. It leaves no room for the states to supplement or, as in this case, violate its commands. *See Arizona v. United States*, 567 U.S. 387, 399 (2012) ("[I]ntent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room

---

symptoms. As noted throughout this brief, whether or not Ryan White qualifies as a federal public benefit, it is both field and conflict preempted by PRWORA and Ryan White.

for the States to supplement it."). Courts have repeatedly held that regulation of immigrants' access to public benefits is field preempted by PRWORA. *See Poder in Action v. City of Phoenix*, 506 F. Supp. 3d 725, 735 (D. Ariz. 2020); *LULAC*, 997 F. Supp. at 1255; *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 605 (E.D. Va. 2004); *cf. Korab v. Fink*, 797 F.3d 572, 580-81 (9th Cir. 2014) ("[T]he statute sets out a comprehensive set of eligibility requirements governing aliens' access to both federal and state benefits."). Defendants attempt to resist this well-established conclusion without addressing any of these cases or citing any contrary authority. *See* Dkt. 20 at 9 (claiming without citation that Congress has not preempted the field of public benefits for immigrants).

Instead, Defendants conflate distinct provisions of PRWORA. First, Defendants claim that because PRWORA provides states some specifically-enumerated discretion over immigrant eligibility requirements for certain *state and local public benefits,* they are empowered to impose their own immigration status requirements on an exempted federal program.[5] The fact that Congress chose to explicitly provide the states with enumerated limited authority over access to *state and local public benefits*, reinforces two things: (1) that it knew how to delegate such authority and did not do so with respect to these federal benefits, and (2) that the federal scheme is so pervasive as to necessitate specific delegations of power. *See LULAC*, 997 F. Supp. at 1255 ("Congress' intention to displace state power in the area of regulation of public benefits to immigrants is manifest in the careful designation of the limited instances in which states have the right to determine alien eligibility for state or local public benefits. . . . That is all the states are

---

[5] Congress was clear and particular in PRWORA to enumerate the very specific federal programs it granted states limited discretion to determine immigrant eligibility for -- Ryan White, along with other programs addressing communicable diseases, is not one of them.. *See* 8 U.S.C. § 1612(b)(1) (permitting states to determine eligibility for TANF, Social Services Block Grant, and Medicaid); 8 U.S.C. § 1615(b)(1) (permitting states to determine eligibility for specified food assistance programs); 42 USC § 1396b(v)(4)(permitting states to provide Medicaid to a broader group of lawfully residing children and pregnant people). Congress's careful designation of limited state discretion reinforces that PRWORA establishes a comprehensive scheme governing public benefits with preemptive effect.

permitted to do."); *cf. Korab*, 797 F.3d at 581 ("[A] state's limited discretion to implement a plan for a specified category of aliens does not defeat or undermine uniformity.").

Moreover, the prefatory language Defendants cite in 8 U.S.C. § 1601(7) neither inserts ambiguity nor grants independent broad authority to states to overrule the specific immigrant eligibility rules and exemptions enumerated throughout the comprehensive statute. *See* Dkt. 20 at 3-4. "Clearly, Congress decided that the benefits it preserved for non-citizens after PRWORA did not interfere with its interest in assuring non-citizen self-sufficiency." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 77 (2d Cir. 2020) (citing 8 U.S.C. § 1601(7)); *see also Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 543 (D. Ariz. 2021) (internal citations omitted) ("[A] statute's purposes section cannot control over the law's express terms. . . . [I]t is well established that the purposes section of a statute will not control in the face of clear enacting provisions.").

Defendants' arguments ignore the "well established canon of statutory interpretation . . . 'that the specific governs the general.'" *United States v. Brumbaugh*, 139 F.4th 1077, 1085 (9th Cir. 2025). That canon applies to PRWORA, in which "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions[.]" *Id.*; *see also Korab*, 797 F.3d at 580 (noting that PRWORA establishes a comprehensive scheme). In PRWORA, Congress spoke specifically to which statuses qualified for which benefits and which benefits would be available regardless of status in § 1611.

Second, Defendants attempt to expand their explicitly limited authority under the Ryan White Act to establish procedures for verifying a documented HIV diagnosis, low-income status and residency within the local service area[6] to override the federal immigration status eligibility exemptions enumerated in 8 U.S.C. § 1611(b). Dkt. 20 at 11. But Defendants are reaching for an inference of state authority where none exists. No provision of Ryan White authorizes or relates to any state authority to establish immigration requirements for Ryan White treatment services

---

[6] *See Plyler v. Doe*, 457 U.S. 202, 227 n.22 (1982) (confirming that residency and citizenship requirements for public programs are distinct).

eligibility; the Ryan White statute grants states limited discretion to establish procedures for verifying eligibility only with respect to: (1) proof of an HIV/AIDS medical diagnosis, and (2) the definition of "low-income status" for otherwise eligible individuals. Ryan White CARE Act, 42 U.S.C.A. § 300ff-26. Defendants' argument would have the State's limited authority to determine unrelated criteria like income and diagnosis requirements swallow whole 8 U.S.C. § 1611(b)'s specific Congressional exemptions governing immigrant eligibility for the federally-funded program. That argument simply does not hold water.

The State's citation to HRSA's Policy Clarification Notice 16-02, Dkt. 20 at 11, to claim that state recipients of federal funds are entitled to narrow the definition of who is eligible for services is likewise flawed. HRSA's review of a state's option to narrow eligibility is not open-ended, but instead limited to proof of the clinical progression of HIV/AIDS status as a diagnosis. The statement that the eligibility group may not be broadened expressly relates to HIV status, where the provision of services cannot be broadened to people without an HIV diagnosis. HRSA Policy Clarification Notice 16-02. Again, where § 1611(b)(1)(C) speaks directly to the availability of "treatment of symptoms of communicable diseases" for immigrants, a HRSA Policy clarification addressing diagnostic eligibility requirements that have nothing to do with immigration status cannot authorize exactly what § 1611(b)(1)(C) prohibits.

Defendants' citation to the Attorney General's Order, 66 FR 3613-02 at 3614–15 (Jan. 16, 2001), fares no better. Defendants note the Order's statement that "[a]ll programs and services covered by the Order are exempt from any requirement that verification be conducted, unless service providers are mandated to conduct such verification pursuant to federal, state, or local law other than the Welfare Reform Act[.]" However, this is not a delegation of authority to states to override the Congressional exemptions in § 1611(b). The Attorney General's order is tasked with defining the scope of two related exemptions for federal public benefits under § 1611(b)(1)(D) and for *state and local public benefits* under § 1621(b)(4). *See also* 66 FR 3613-02 at 3615 (Jan. 16, 2001) (referencing in sentence proceeding Defendants' quotation "federal, *state, and local* public

benefits") (emphasis added). Because PRWORA explicitly defined and circumscribed state authority to impose requirements on state and local public benefits through § 1621(d) and § 1622, the Attorney General's reference to state and local law applies to state and local public benefits, not federal public benefits. Defendants would have this court determine that a single sentence in the federal register applicable to multiple categories of distinct programs treated differently in different parts of the statute somehow overrides the explicit Congressional exemption in § 1611(b)(1)(C). Congress also made clear that while exempted programs listed in § 1611(b)(1)(D) may be subject to the U.S. Attorney General's discretion, § 1611(b)(1)(C) is a statutory exemption that is not subject to either state or attorney general discretion. Again, Defendants' interpretation is divorced from the text of PRWORA itself, which does not support their argument.

Taken together, Defendants' argument rests on a logical fallacy. Congressional delegations of circumscribed and unrelated state and local authority do not defeat field preemption. *See LULAC*, 997 F. Supp. at 1255 (finding evidence of field preemption in "the careful designation of the limited instances in which states have the right to determine alien eligibility for state or local public benefits"); *cf. Korab*, 797 F.3d at 581 ("[A] state's limited discretion to implement a plan for a specified category of aliens does not defeat or undermine uniformity."). They do not allow the State to block access to federal funds for qualifying applicants in contravention of the explicit federal exemption for "treatment of symptoms of communicable diseases." 8 U.S.C. § 1611(b)(1)(C). Defendants' argument would render Congress's statutory exemptions meaningless.

Because field preemption is clearly established in PRWORA, the Court need not decide whether Ryan White is a federal public benefit. In either case, PRWORA provides the full statutory structure of public benefits and eligibility verification requirements for immigrants, leaving the states no room to impose or invent their own requirements.

### 2.    *H.B. 135 Conflicts with the Text and Purposes of PRWORA and Ryan White*

In addition to field preemption, the State's actions here are conflict preempted. The State's restrictions serve as an obstacle to the accomplishment of the full purposes of Ryan White and—if Ryan White is a federal public benefit as Defendants claim—create an impossibility conflict with PRWORA exemptions.

#### i.    *H.B. 135 Expressly Conflicts with and Attempts to Override PRWORA's Statutory Language at 8 U.S.C. § 1611(b)*

H.B. 135 creates verification requirements that directly conflict with Congress's express decision in PRWORA to make these programs available regardless of immigration status. H.B. 135 deletes the exemption, taken from PRWORA, "[f]or public health assistance for immunizations with respect to immunizable diseases and testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease." Idaho Code § 67-7903 (as amended by H.B. 135, April 2025); see also Dkt. 2-1 at 5-6 (providing statutory text with amendments). It further deletes language conforming the Idaho statute with federal law, striking "where exempted by federal law," revealing that the legislature understood that the statute created conflicts with federal law, such as the conflict with the communicable disease exception. *Id.*

H.B. 135 makes it physically impossible for benefits providers to comply with Idaho law mandating immigration status verification and federal law mandating that programs for the treatment of communicable diseases be exempted from verification requirements, creating a direct conflict.

Defendants admit that "the federal immigration classifications in H.B. 135 come from PRWORA," yet H.B. 135 does not "mirror federal objectives and incorporate federal immigration classifications." *See* Dkt. 20 at 3 (quoting *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017)). Idaho cannot claim to mirror or incorporate PRWORA's immigration classifications by deleting or overruling its expressly mandated exemptions for federally-funded public benefits,

including testing, immunizations and treatment for communicable diseases as provided for under PRWORA.

>    ii.    *H.B. 135 Is an Obstacle to the Congressional Purpose of Ryan White*

The State's newly imposed immigration status verification requirement stands as an obstacle to the purpose of Ryan White—to prevent the spread of HIV, which is communicable beyond a single state's borders, by creating cost-effective systems for combatting the virus. *See Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 482 n.4 (9th Cir. 2023) (state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Congress, through Ryan White, determined that the best way to combat HIV as a communicable disease with such deadly public health consequences was to fund treatment that saves lives and prevents transmission. 42 U.S.C. § 300ff (describing the purpose of Ryan White as "mak[ing] financial assistance available to . . . provide for the development, organization, coordination and operation of more effective and cost efficient systems for the delivery of essential services to individuals and families with HIV disease."); *see also* Dkt. 15 at 11-12; Dkt. 2-1 at 21-22. The State's decision to deny this funding blocks access for low-income Idahoans to essential care which they cannot otherwise afford. *See* Suppl. Decl. of Dr. Abby Davids ("Suppl. Davids Decl.") ¶¶ 1-4 (explaining that, to receive Ryan White funding, participants must demonstrate that they cannot fund their treatment in another manner). By allowing individuals who qualify for care under PRWORA and Ryan White to go untreated, the State undermines Congress's purpose in maximizing cost efficiency and reducing the number and severity of HIV infections, the development of AIDS, and untimely death.[7] Congress's purpose cannot be fully executed if

---

[7] *See Dr. Laura Cheever, MD, ScM, HIV/AIDS Bureau, HRSA, HHS: "HRSA Publishes Journal Articles Demonstrating the Cost-Effectiveness of the Ryan White HIV/AIDS Program in the Journal of Acquired Immune Deficiency Syndromes" | HIV.gov , Feb. 26, 2021*("As a result of improved access to care and treatment . . . RWHAP is associated with 18 percent fewer new HIV infections and 31 percent fewer deaths among people with HIV" and according to the "guidelines

qualifying low-income individuals living with HIV are unable to access treatment because of an unlawful state immigration status verification requirement. *See generally* Suppl. Davids Decl. ¶¶ 2-8 Exhibits A-E (demonstrating Ryan White eligibility requirements). Defendants' actions effectively block the accomplishment of the Ryan White Program objective of "mak[ing] financial assistance available . . . for the delivery of essential services to individuals and families with HIV disease." 42 U.S.C. § 300ff.

C.    **Plaintiffs Will Suffer Irreparable Injury Absent a Temporary Restraining Order and Injunction.**

Plaintiffs face immediate and irreparable harm if H.B. 135 is enforced to bar patient Plaintiffs and similarly situated individuals from access to the Ryan White Program. *See M.R. v. Dreyfus*, 663 F.3d 1100, 1114-16 (9th Cir. 2011), *amended on other grounds*, 697 F.3d 706 (9th Cir. 2012) ("The reduction or elimination of public medical benefits is sufficient to establish irreparable harm to those likely to be affected by the program cuts[.]"). Defendants argue that (i) the "only harm is economic," and (ii) "Plaintiffs can avoid any irreparable harm," but neither argument is supported by the record or the law. *See* Dkt. 20 at 16.

Contrary to Defendants' speculations concerning Plaintiffs' (lack of) access to treatment, the Ryan White Program is a payer of last resort. *See* Supp. Davids Decl. ¶¶ 1–4. Plaintiffs are categorically ineligible for Medicaid, Affordable Care Act health insurance, employer-based insurance, Medicare, Veterans Health Administration health plans, Continuation of Health Coverage, or any other public or private health coverage. They must affirmatively prove the absence of all other coverage to qualify for Ryan White. *Id*. And it is the only means by which Plaintiffs can access life-saving antiretroviral therapy ("ART") and related medical care. KP Decl. ¶¶ 20, 28, Dkt. 2-8; NR Decl. ¶¶ 22, 29, Dkt. 2-9; FF Decl. ¶¶ 15, 23, Dkt. 2-10; JAOG Decl. ¶¶ 17, 24, Dkt. 2-11; Doe Decl. ¶¶ 12, 20, Dkt. 2-12. The cost of ART, such as Biktarvy for

---

of the World Health Organization for assessing cost-effectiveness, the RWHAP would be considered very cost-effective, with an incremental cost-effectiveness ratio of $29,573 per quality-adjusted life year (QALY) gained.").

example, is over $4,200 per month at retail, and even discounted programs such as 340B require payments far beyond Plaintiffs' means. Supp. Davids Decl. ¶¶ 11–14. Defendants' reliance on the availability of pharmaceutical assistance or charity care is speculative.[8]

Defendants also attempt to distinguish Ninth Circuit case law finding irreparable harm from reductions in entitlement welfare benefits because the Ryan White grant is not an entitlement program. But that is a distinction without significance: the harm remains the same and irreparable. Without Ryan White, Plaintiffs will lose access to life-saving medications, laboratory monitoring, and other medical services, resulting in severe health deterioration, potentially transmission to children of pregnant patients and other members of the public, increased risk of opportunistic infections, progression to AIDS, and ultimately, death—harms that are quintessentially irreparable and cannot be remedied by monetary damages or subsequent legal relief. Dr. Davids Decl. ¶¶ 18–19, 37–45, Dkt. 2-2. As the Ninth Circuit has made clear, "pain, infection, amputation, medical complications, and death due to delayed treatment" are irreparable injuries. *M.R.*, 663 F.3d at 1110.

Defendants' argument that Plaintiffs could avoid harm by self-deporting is indefensible. One Plaintiff is a Deferred Action for Childhood Arrivals recipient who has lived in the United States since the age of four. JAOG Decl. ¶¶ 4, 7. Several Plaintiffs are asylum seekers with federal work authorization while their applications are pending, some with young U.S. citizen children. *See*, *e.g.*, KP Decl. ¶¶ 3, 9–10; NR Decl. ¶¶ 3, 11–12; FF Decl. ¶ 4. Compelling them to return to countries from which they are fleeing persecution could expose them to grave danger and violate the United States' obligations under international laws. Defendants provide no authority that, to find irreparable harm, Plaintiffs must first abandon their legal rights or place themselves in harm's way, risking an entirely different irreparable harm. The loss of access to life-saving HIV treatment

---

[8] To clarify prior statements in Dr. Davids' initial declaration and the declarations of the patient plaintiffs regarding the frequency of reenrollment, the reenrollment process through a recertification form is not required every six months, it is only required annually. Supp. Davids Decl., ¶ 6, Ex. C. However, the clinic is required to submit a form to IDHW every six months that verifies a patient's eligibility to remain in Ryan White/ADAP. Patients are also required to meet with their medical case managers every six months. Supp. Davids Decl., ¶¶ 7, 9-10, Exs. D, F.

is not compensable by money damages, is not speculative, and cannot be remedied after the fact. For these reasons, Plaintiffs have made a clear and compelling showing of irreparable harm.

**D.    The Balance of Equities and Public Interest Supports a Temporary Restraining Order and Injunction.**

The equities in this case are stark. Plaintiffs face the imminent loss of access to their only accessible, life-saving HIV treatment and medical care. Aligned with the Plaintiffs is also the public interest: there is a "robust public interest in safeguarding access to health care for . . . the most needy in the country." *M.R.*, 663 F.3d at 1119. The Ryan White Program protects not only individual patients, but also the broader community by preventing the spread of HIV. Withdrawal of treatment from vulnerable populations undermines public health, increases the risk of new infections, and imposes greater long-term costs on the health care system and society at large. (*See*, *e.g.*, Dr. Davids Decl. ¶¶ 43–45.) At this juncture, Plaintiffs seek to preserve the status quo to maintain access to the Ryan White Program under the same eligibility criteria that have governed for decades, while the legality of H.B. 135 is adjudicated.

Defendants contend that the public interest in enforcing H.B. 135 is to preserve finite public resources for citizens and lawful residents, citing the declaration of Defendant Angie Bailey for the proposition that "every dollar that goes to pay for treatment for an alien who is not eligible is a dollar that is not available to pay for treatment for someone who is eligible." Dkt. 20 at 18. However, this assertion overstates the record. Bailey's declaration advances the hypothetical that "*to the extent* the [funds] were to be used for treatment of persons who are not eligible[9] . . . there could have been that much less assistance available for eligible persons." Bailey Decl. ¶ 9 (emphasis added), Dkt. 20-1. Bailey does not actually identify a single instance in which an eligible citizen has been denied or delayed access to HIV treatment or services because of the participation of a noncitizen in the program. Defendants face, at most, a minimal administrative burden in

---

[9] The patient plaintiffs are, in fact, eligible; there is no immigration status verification requirement for Ryan White and they meet the other income, residency, and diagnostic eligibility criteria.

maintaining existing practices for a limited period. The balance of equities thus tips sharply in Plaintiffs' favor.

### E.     Bond Should Be Waived.

Defendants have not shown any actual harm from an injunction, as the Ryan White Program is funded entirely by federal grants and rebates, not by state resources. Bailey Decl. ¶¶ 8–9. Defendants' argument that an injunction would allow federally-eligible individuals to receive benefits does not identify any cost or loss to Defendants. Without evidence of financial or administrative harm, no bond is warranted. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), *supplemented*, 236 F.3d 1115 (9th Cir. 2001).

Moreover, Plaintiffs are of limited means. Requiring a substantial bond would effectively deny them access to judicial review. Courts routinely waive or set nominal bonds in such circumstances to avoid barring relief to those of limited means. *E.g.*, *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985). The Court should therefore waive the bond requirement in its entirety.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction.

Dated: July 11, 2025                                   Respectfully submitted,

*/s/ Emily Myrei Croston*
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
