RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

DAVID J. MYERS, ISB #6528
MEGAN ANDERSON, ISB# 10094
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
megan.anderson@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABBY DAVIDS, MD, K.P., N.R., F.F., J.A.O.G., and JOHN DOE, | Case No. 1:25-cv-00334-AKB |
| *Plaintiffs*, | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| ALEX ADAMS, in his official capacity as Director of the Idaho Department of Health and Welfare, MIREN UNSWORTH, in her official capacity as the Deputy Director of IDHW in charge of Health & Human Services, ELKE SHAW-TULLOCH, in her official capacity as the administrator of IDHW's Division of Public Health, ANGIE BAILEY, as Director of the Idaho Bureau of Rural Health & Primary Care, RAÚL LABRADOR, in his official capacity as the Attorney General of Idaho, | |
| *Defendants*. | |

## INTRODUCTION

Congress has made a clear statement that the "national policy with respect to welfare and immigration" is that "aliens within the Nation's borders not depend on public resources to meet their needs," and that the "availability of public benefits not constitute an incentive for immigration to the United States." 8 U.S.C. § 1601(2). The U.S. Health and Human Services (HHS) has even recently warned that "all entities … should pay heed" to these "clear expressions of national policy." 90 Fed. Reg. 31232001, 31237 (July 14, 2025). Idaho has taken note of this clear expression of national policy, and in the 2025 legislative session passed H.B. 135 to ensure that when it dispenses federal public benefits, they go to citizens and qualified aliens only. Plaintiffs' challenges to H.B. 135 fail and the Court should dismiss the suit in its entirety.

Plaintiffs have no private right of action to pursue Claim One. Their claim to an equitable cause of action fails given Congress' clear expression of intent that the PRWORA not be construed as creating an entitlement. *See* 8 U.S.C. § 1643(a)(1). Plaintiffs do not have a protected property interest in Ryan White benefits, which are not an entitlement, and therefore lack a property interest that can be protected by the Due Process Clause. Claim Two should therefore be dismissed. Because H.B. 135 satisfies both rational basis review and heightened scrutiny, Plaintiffs' Equal Protection argument in Claim III fails, and it should also be dismissed. In addition, Plaintiffs do not have standing to sue Attorney General Labrador, and the statute gives him no enforcement authority. He should therefore be dismissed as a Defendant.

## BACKGROUND

H.B. 135, consistent with the overarching national policy concerning welfare and immigration, was designed to promote self-sufficiency for lawful immigrants and to prevent public benefit programs from incentivizing illegal immigration. Mindful of federal immigration law and related case law, H.B. 135 "mirror[s] federal objectives and incorporate[s] federal immigration

classifications." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017).

**PRWORA**

The federal immigration classifications in H.B. 135 come from the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 U.S.C. § 1601 et seq. Adopted in 1996 as part of bipartisan welfare reform, the overarching command of PRWORA is that "an alien who is not a qualified alien [as defined by the statute] *is not eligible* for any Federal public benefit." 8 U.S.C. § 1611(a) (emphasis added).

PRWORA has four exceptions in which a *non-qualified alien* is not automatically excluded from benefits, including public health assistance "for testing and treatment of symptoms of communicable diseases." 8 U.S.C. § 1611(b)(1)(C). PRWORA further recognizes states' freedom to adopt or not adopt the general prohibition on public benefits to non-qualified aliens by explicitly allowing states to continue to distribute state or local public benefits even to non-qualified aliens, if the state affirmatively adopts a state law to do so. 8 U.S.C. § 1621(d).[1]

**Ryan White**

The Ryan White Care Grant Program is not an entitlement program—it is a discretionary grant program in which HHS "make[s] grants to States to enable such States to improve the quality, availability and organization of health care and support services for individuals and families with HIV/AIDS." 42 U.S.C. § 300ff-21. These grants are "subject to the availability of [annual] appropriations." *Id.* The Idaho Department of Health and Welfare (IDHW) administers Part B, also known as ADAP (Aids Drug Assistance Program), in Idaho.[2] Dkt. 1 ¶ 14. The State's access to

---

[1] This provision of PRWORA appears to be the origin of the term "lawful presence" as a synonym for "qualified alien" in H.B. 135.

[2] To avoid multiple interrelated acronyms, Defendants will refer to the Ryan White HIV/AIDS Program and Part B/ADAP collectively as "Ryan White."

Ryan White grants is contingent on submitting an annual application to HHS and HHS's approval. 42 U.S.C. § 300ff-27. An individual's actual receipt of Ryan White services depends on all of these factors, plus the changing numbers of HIV/AIDS sufferers in any particular area nationwide.

**Idaho Statutes**

Idaho Code § 67-7903, adopted in 2007, tracked closely with PRWORA and required verification of the "lawful presence" of any adult applicant for federal, state, or local public benefits. The exceptions to Idaho's verification statute, however, grew from four to eight, including exceptions for prenatal care, postnatal care for 12 months, and food assistance to a minor dependent child. § 67-7903(3)(f)-(h) (2022).

H.B. 135 amended Idaho Code § 56-203 regarding the powers of IDHW to include the already existing requirements of lawful presence in § 67-7903. Idaho Code § 56-203(6). For § 67-7903, H.B. 135 reduces to three the number of exceptions to the verification of lawful presence requirement: emergency medical conditions, emergency disaster relief, and in-kind assistance at short-term shelters that is not conditioned on income and is necessary for the protection of life or public safety. One of the removed exceptions is former § 67-7903(d)—public health assistance for testing and treatment of symptoms of communicable diseases.

**This Lawsuit**

Plaintiffs filed their Complaint, Dkt. 1, on June 26, 2025, asserting three claims, each under equity and § 1983—Claim One: Preemption; Claim Two: Due Process; and Claim Three: Equal Protection. Plaintiffs contemporaneously sought a TRO, a preliminary injunction, and provisional class certification. Dkt. 2. The Court entered an Ex Parte TRO on June 30, Dkt. 15, and held a hearing on July 15, following which the Court extended the TRO (a) for an additional 14 days and (b) to a provisional class. Dkt. 32. The Court subsequently granted the motion for preliminary

injunction and provisionally certified a class of Plaintiffs, appointed Plaintiffs' counsel as class counsel, deferred a final decision on Plaintiffs' Motion for Class Certification (Dkt. 3) and waived the Rule 65(c) bond requirement. Dkt. 37.

**LEGAL STANDARD**

A motion to dismiss based upon a defendant's Eleventh Amendment immunity may be brought under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

A motion to dismiss under Rule 12(b)(6) may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "A complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up).

**ARGUMENT**

I.    **Plaintiffs have no private right of action under equity or § 1983, and PRWORA does not preempt H.B. 135 (Claim One).**

      **A.  Plaintiffs do not have a private right of action to sue in equity or under § 1983.**

Plaintiffs' first claim alleges that H.B. 135 is preempted by federal law and is therefore invalid under the Supremacy Clause, Article VI, Section 2 of the U.S. Constitution. Dkt. 1 at ¶¶ 116–22. The U.S. Supreme Court is clear that "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstong v. Exceptional Child Care Center, Inc.*, 575 U.S. 320, 324–25 (2015) (cleaned up). Rather, Plaintiffs must have some independent source for their claimed cause of action. Plaintiffs claim their cause of action exists under the Court's general equitable authority and under 42 U.S.C. § 1983. Dkt. 1 ¶¶ 121, 122. Neither equity nor § 1983 provides a cause of action here and Claim I must therefore be dismissed.

**1.  Plaintiffs have no private right of their own to vindicate in equity.**

While federal courts of equity have created an "ability to sue to enjoin unconstitutional actions by state and federal officers," the "power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327. Where a statute "implicitly precludes private enforcement" of the act, the plaintiff "cannot, by invoking [the court's equitable powers], circumvent Congress's exclusion of private enforcement." *Id.* at 328. Thus, in *Armstrong*, the "sheer complexity associated with enforcing § 30(A) [of the Medicaid Act], coupled with the express provision of an administrative remedy . . . shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts." *Id.* at 329. Similarly, Congress has expressly and impliedly precluded private enforcement of the PRWORA through its complex immigration verification system and express statement in 8 U.S.C. § 1643(a)(1) that the PRWORA is not to be construed as an entitlement.

In its decision granting the Plaintiffs' motion for a preliminary injunction, the Court recognized the limitations from *Armstrong* but stated that the Defendants "do not identify any statutory provision in PRWORA which expresses or implies Congress' intent to prohibit Plaintiffs from pursuing a preemption claim in equity under the Supremacy Clause." Dkt. 37 at 10. Defendants will simply note the fast pace of the briefing on the Motion for Preliminary Injunction and that Plaintiffs did not raise the equitable argument in their initial motion and only addressed it in their reply brief. However, PRWORA does clearly "express[] or impl[y] Congress' intent to prohibit Plaintiffs from pursuing a preemption claim in equity under the Supremacy Clause."

Congress clearly expressed its intent in PRWORA that it is "the immigration policy of the United States that … aliens within the Nation's borders not depend on public resources to meet their need." 8 U.S.C. § 1601(2)(A). Further, Congress stated that "[i]t is a compelling government

interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). To enforce these policies, Congress set forth a complex system for determining which aliens would be eligible for certain federal benefits based, in part, on the specific federal benefit program and the alien's immigration status. 8 U.S.C. §§ 1611–1615. Congress directed the Attorney General to promulgate regulations implementing the statute and required states to comply with those regulations. 8 U.S.C. § 1642. Specifically, states have "24 months after the date the regulations [promulgated by the Attorney General] are adopted" to implement a "verification system that complies with the regulations." 8 U.S.C. § 1642(b).[3]

Most importantly for purposes of determining Congress's clear intent to prohibit Plaintiffs from pursuing a preemption claim in equity is 8 U.S.C. § 1643. In that section, Congress unambiguously stated that "[n]othing in this chapter may be construed as an entitlement or a determination of an individual's eligibility or fulfillment of the requisite requirements for any Federal, State, or local governmental program, assistance, or benefits." 8 U.S.C. § 1643(a)(1).

Plaintiff is attempting to use this Court's equitable power to make PRWORA an entitlement. Allowing Plaintiffs to sue in equity would be directly contrary to Congress's command in § 1643. Thus, § 1643, combined with the complex verification system enacted in §§ 1611–1615 and Congress's directive to the Attorney General to adopt regulations implementing those sections "precludes private enforcement of [the Act] in the courts." *Armstrong*, 575 U.S. at 329.

The authorities cited by the Court in its decision granting the motion for preliminary injunction (from inferior courts) are distinguishable and do not support the finding that the

---

[3] It is unclear whether final regulations were ever issued. The Attorney General issued Interim Guidance in 1997, 62 Fed. Reg. 61344 (Nov. 17, 1997). The Attorney General's July 16, 2025 Order, 90 Fed. Reg. 32023, 32024 (July 16, 2025), references that Interim Guidance, but does not cite to any final regulations, despite citing to the provisions of the PRWORA requiring her to adopt final regulations.

Plaintiffs have an equitable cause of action under PRWORA. *United States v. Texas*, 97 F.4th 268, 276 (5th Cir. 2024), is inapposite because there the Plaintiff was the United States, from which states have no Eleventh Amendment immunity, suing a state to vindicate the United States' "broad powers and rights granted by the Constitution and Congress regarding immigration matters." Further, Texas had cited to "no constitutional or statutory provision that expressly or impliedly displaces an action arising in equity to enjoin executive action with regard to the matters at issue in this litigation." *Id.* Defendants have now pointed to express authority in the PRWORA that precludes private parties from bringing a suit in equity under the PRWORA.

The Court's citation to *Farmworker Ass'n*, Dkt. 37 at 9, also is of no help. In that case, the court specifically differentiated between *Armstrong's* claim in which the plaintiffs "sought affirmative relief in the form of additional payments," and the plaintiffs in the *Farmworker* case who were "seeking to deploy *Ex parte Young* as a shield to protect themselves against the enforcement of an allegedly preempted state law." *Farmworker Ass'n of Fla. v. Uthmeier*, No. 23-CV-22655-RAR, 2025 WL 1133682, at *5 (S.D. Fla. Apr. 17, 2025). The Plaintiffs in the instant case are not seeking "to deploy *Ex parte Young* as a shield to protect themselves against the enforcement of an allegedly preempted state law," but are instead, as in *Armstrong*, seeking "affirmative relief" in the form of the Court declaring that they have an entitlement to the Ryan White program benefits. As discussed above, 8 U.S.C. § 1643 prohibits this.

Due to the "express[ed] and implied statutory limitations" contained in the PRWORA, *Armstrong*, 575 U.S. at 327, there is no equitable authority to create a cause of action.

### 2.  Plaintiffs have no private right of their own to vindicate under § 1983.

Plaintiffs appear to have abandoned 42 U.S.C. § 1983 as a route to pursue their preemption claim. In their reply in support of their motion for preliminary injunction, Dkt. 28 at 3–4 ("But the State overlooks the fact that Plaintiffs bring their preemption claims in equity"), and again at the

July 15 hearing, Plaintiffs made no attempt to rebut Defendants' arguments and authorities, Dkt. 20 at 8–9, demonstrating that *Medina v. Planned Parenthood S. Atlantic,* 145 S. Ct. 2219 (2025), forecloses the § 1983 route. *See* Dkt. 37 at 8 ("In reply to Defendants' reliance on *Medina*, Plaintiffs note they have and may bring their preemption claim in equity").

To the extent Plaintiffs have not conceded the unavailability of a claim under § 1983, Defendants reiterate that "federal statutes do not confer 'rights' enforceable under § 1983 'as a matter of course'" and that "spending-power statutes"—such as Ryan White—"are especially unlikely to do so." *Medina*, 145 S. Ct. at 2227, 2230. Missing from Ryan White and from PRWORA "is anything like . . . clear and unambiguous 'rights-creating language.'" *Id.* at 2235 (citing *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023)); *see also AIDS Healthcare Found., Inc. v. Orange Cnty.*, No. 6:08-cv-1672-Orl-31DAB, 2009 WL 33535, *2–3 (M.D. Fla. Jan. 5, 2009) (finding no explicit or implied right of action under Ryan White). Indeed, 8 U.S.C. § 1643 makes it clear that the PRWORA is not to be used to create an entitlement to any federal benefit, which is exactly what Plaintiffs are attempting to do.

### B. Congress has not preempted the field of public benefits for aliens.

Since the Plaintiffs lack a cause of action under Claim I, the Court need not address preemption. A look at the PWRORA as a whole, however, shows that H.B. 135 is not preempted.

The Court has discussed but not decided "whether PRWORA completely preempts the field of regulation governing public benefits for aliens." Dkt. 37 at 13. While "States are precluded from regulating conduct in a field that Congress … has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012), "not all state regulations touching on immigration are preempted." *Ariz. Dream Act Coal.*, 855 F.3d at 972; *see, e.g., Arizona*, 567 U.S. at 410–15. Federal law "should not be deemed preemptive" unless "the nature of the regulated subject matter permits no other conclusion" or "Congress has unmistakably so

ordained." *DeCanas v. Bica*, 424 U.S. 351, 356 (1976) (upholding state law applying criminal sanctions to employers who knowingly hire illegal aliens against challenge that the law was preempted by federal immigration policy). When analyzing field preemption, "the relevant field should be defined narrowly." *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 177 (5th Cir. 2018) (citing *Arizona*, 567 U.S. at 400–01 (defining the relevant field as "alien registration"), and *DeCanas*, 424 U.S. at 360 n.8 ("Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution.")).

Here, Congress has not unmistakably ordained that it has preempted the field of public benefits for unqualified aliens. The operative question, therefore, is whether the nature of the regulated subject matter permits no conclusion other than field preemption. Considering the authorities discussed by the Court, it does not.[4]

The single case holding that PRWORA amounts to field preemption, *League of United Latin Am. Citizens v. Wilson*, 997 F. Supp. 1244 (C.D. Cal. 1997) (*LULAC*), has never been followed in 28 years because it defines the relevant field, not narrowly, but sweepingly. In fact, another case cited by the Court disagreed with *LULAC*, describing it as "neither controlling nor persuasive." *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 605 n.19 (E.D. Va. 2004) (finding no field preemption by PRWORA).

The third case cited by the Court, *Korab v. Fink*, 797 F.3d 572 (9th Cir. 2014), was a Naturalization Clause and Equal Protection case, not a field preemption case. The Ninth Circuit's description of the PRWORA related to the scope of the uniformity requirement in the

---

[4] Defendants confine their discussion of field preemption in this Memorandum to the authorities cited by the Court in its July 24 Order, Dkt. 37 at 12–13, having already rebutted Plaintiffs' authorities in Defendants' Response to the motion for preliminary injunction. Dkt. 20 at 15–16.

Naturalization Clause, not to a field preemption analysis. *Id.* at 580–81. In addition, the case did not involve unqualified aliens such as Plaintiffs but a distinct category, "nonimmigrants" (specifically, "COFA Residents" residing in Hawaii under a Compact of Free Association with the United States) "for whom [unlike Plaintiffs] Congress authorizes states to determine eligibility for state benefits." *Id.* at 580. Moreover, the Ninth Circuit upheld Hawaii's reduction of state-funded health care benefits for COFA Residents against the Equal Protection challenge.

### C. H.B. 135 is not conflict preempted by PRWORA.

Conflict preemption in the immigration context occurs when a state law makes it impossible to comply with federal law or obstructs the objectives of federal immigration policy. *Arizona*, 567 U.S. at 399. Unlike field preemption analysis, conflict preemption focuses on specific conflicts between state and federal law, even in areas where states may have some regulatory authority. There is a presumption in favor of a challenged state law unless that law conflicts with the clearly stated purpose of a federal law. *Id.*; *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) ("Our precedents establish that a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act.") (internal quotations omitted).

The alleged conflict between PRWORA and H.B. 135 is belied by the Act's terms, HHS's interpretation, and the U.S. Attorney General's assessment of the relative benefits and harms.

### i.    PRWORA purposefully restricts public benefits available to nonqualified aliens; it never requires the provision of such benefits.

Congress could not have been more explicit in disfavoring public benefits for unqualified aliens. 8 U.S.C. § 1601(2)(A)-(B). The Act makes clear that an alien who is not a "qualified alien" "is not eligible for any Federal public benefit" and "is not eligible for any State or local public benefit." 8 U.S.C. §§ 1611(a), 1621(a)(3).

While the Act makes four exceptions to the general rule, § 1621(b)(1)-(4), those exceptions

mean that a state can offer benefits in the four categories but is not required to do so. There is no requirement in the Act that every state must provide benefits in those exception categories or under any other circumstances. Indeed, such a requirement would contradict the Act's explicit policy that aliens be self-sufficient and that public benefits not constitute an incentive for immigration. 8 U.S.C. § 1601(2)(A)-(B). It would further turn the PRWORA into an entitlement mandating statute, which Congress explicitly prohibited under 8 U.S.C. § 1643.

The Court stated that the Ryan White program "is mandatorily exempt from PRWORA's qualified alien requirement" because 8 U.S.C. § 1611(b)(1)(C) states that the "qualified alien requirement in § 1611(a) 'shall not apply' to Federal public benefits for the treatment of a communicable disease." Dkt. 37 at 16.   But, as both authorities cited by the Court acknowledge at some length, "shall" is not in fact mandatory, no matter how much we agree with Justice Scalia that the traditional rule is beautiful when adhered to. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012). Unfortunately, as Justice Scalia was forced to admit, "drafters have been notoriously sloppy with their *shalls*, resulting in a morass of confusing decisions"; *shall* "is a semantic mess"; "*Black's Law Dictionary* records five meanings for the word"; even the Supreme Court as a result has "treated *shall* as having variegated meanings"; and "there has been a movement in recent years to rewrite the federal rules . . . to remove the *shalls* and otherwise restyle them." *Id.* at 112-14 (citations omitted).

The Ninth Circuit decision quoted by the Court acknowledges that "the use of 'shall' is not conclusive." *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001).  This is particularly true "when used in a statute that prospectively affects government action," as here, when "'shall' is sometimes the equivalent of 'may.'" *Id.* Thus, the "question whether 'shall' commands or merely authorizes *is determined by the objectives of the statute*." *Id.* (emphasis added).

The objectives of the statute here, of course, are entirely plain and explicit: "It is a compelling governmental interest to enact new rules for eligibility . . . to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5)-(6).

The better understanding of "shall not" in § 1611(b)(1) is that it merely authorizes specified exceptions rather than commands them. Otherwise, it turns the PRWORA into an entitlement.

### ii.     Under HHS's 2025 interpretation of "Federal public benefit," the exceptions to ineligibility are not mandatory.

HHS's recently revised interpretation of "Federal public benefit" also supports H.B. 135's compatibility with PRWORA. Dkt. 30-1 (now codified at 90 Fed Reg. 31232, 2025 WL 1918372 (July 14, 2025)). While "not formally revising the aspects of the 1998 Notice that touch on PRWORA's verification requirements," HHS noted "important considerations for stakeholders to keep in mind"—specifically, "that it is the policy of this country that persons' access to public benefits should turn on those persons' immigration status." Dkt. 30-1 at 19–20. Therefore,

> Even if PRWORA and related regulatory activity do not mandate an entity to conduct verification of the immigration status of a person applying for benefits, *nothing in the statute prohibits such an entity from conducting verification. See* 8 U.S.C. § 1642 . . . . [A]ll entities that are part of HHS's administration of public benefits should pay heed to the clear expressions of national policy described above.

*Id.* at 20–21 (emphasis added). Thus, consistent with HHS's interpretation, and the express intent of Congress contained in § 1643, PRWORA's exceptions to ineligibility are not mandatory.

### iii.    The U.S. Attorney General has made the same cost-benefit analysis as the Idaho legislature.

The day after the preliminary injunction hearing, the United States Attorney General issued a revised specification of excepted programs under 8 U.S.C. § 1611(b)(1)(D). Dkt. 32-1 (now codified at 90 FR 32023-1, 2025 WL 1939232 (July 16, 2025)). The revised specification withdrew

the Attorney General's 2001 Final Order because it "has created confusion about what sorts of programs are subject to PRWORA's requirements and is being applied more broadly than the statute permits." Dkt. 32-1 at 7. "To correct this," the Attorney General exercised her discretion under Exception D "not to except any benefits from PRWORA beyond those excepted by the statute itself." *Id.* at 7, 9. "The benefits of creating additional exceptions to PRWORA . . . are outweighed by the risks of creating [financial] incentives for unlawful migration by allowing access to such programs to individuals who are not 'qualified aliens' as defined by PRWORA." *Id.* at 9; *see id.* at 8 ("even as to benefits that the Attorney General has the legal authority (but not the duty) to except from PRWORA, any reliance interests are significantly outweighed by the need to reduce the incentive for aliens to illegally migrate to the United States").

In adopting H.B. 135, the Idaho legislature legitimately reached the same conclusion in weighing the costs and benefits of providing Federal public benefits to non-qualified aliens.

## II.    H.B. 135 does not violate Procedural Due Process (Claim Two).

Plaintiffs' Complaint alleges that they "have a protected property interest and legitimate claim of entitlement to Ryan White benefits," that Ryan White benefits are not "federal public benefits" under PRWORA, and that enforcement of H.B. 135 must be preceded by a notice and comment period, hearings, and a grace period. Dkt. 1 ¶¶ 125–28.

To establish a procedural due process violation under the Fourteenth Amendment, a plaintiff must demonstrate: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) lack of adequate procedural protections prior to the deprivation. *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). The key question is whether the Plaintiffs have a constitutionally protected property interest in continued program benefits. As a matter of

law, Plaintiffs' allegations fail to establish their Due Process claim; it therefore should be dismissed.[5]

### A.    Plaintiffs do not have a protected property interest in benefits from Ryan White because it is not an entitlement program.

A property interest arises from a "legitimate claim of entitlement," not mere expectation or need. *Id.* at 577. "Key to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

For example, in *Smith v. Reynolds*, 139 F.4th 631, 636 (8th Cir. 2025), unemployment benefits claimants had received benefits through temporary programs funded by the federal government and administered by the states to supplement state unemployment benefits (CARES Act programs). When Iowa terminated its participation in the CARES Act programs, the plaintiffs sued, alleging that Iowa's withdrawal from the programs deprived them of a protected property interest. The Eighth Circuit affirmed the dismissal of the plaintiffs' claims, holding that plaintiffs "lack[] a protected property interest because Iowa's participation in the CARES Act was discretionary—Iowa was free to opt in or out of the CARES programs." *Id.* at 636 (citing *Town of Castle Rock*, 545 U.S. at 756); *see Rizzo v. Dawson*, 778 F.2d 527, 530–31 (9th Cir. 1985) (prisoner's participation in a discretionary vocational training program not a property interest).

Plaintiffs are unable to show that they have an entitlement to funds under the Ryan White program. As described previously, Ryan White is not an entitlement program. It is instead a grant

---

[5] The Court has already dispensed with Plaintiffs' claim that Ryan White benefits are not "federal public benefits." Dkt. 37 at 16; *see also* Dkt. 30-1 at 17 (public health assistance described in 8 U.S.C. § 1611(b)(1)(C) "very much is a 'Federal public benefit'").

program to States in which the grants themselves and their amounts depend on myriad factors at the national, state, and local level that are not specific to any individual recipient of Ryan White services. Further, the State of Idaho is free to opt in or out of the program at any time, and whether the State applies for the grants is a discretionary decision that rests entirely with the State.

In addition, under the terms of the Ryan White statute, the program benefits are granted to states and municipalities, not to individual patients. *See County of Nassau, N.Y. v. Leavitt*, 524 F3d 408, 410 (2nd Cir. 2008); *AIDS Healthcare Found., Inc.*, 2009 WL 33535, at *3 ("Congress intended to benefit '*localities* that are disproportionately affected' by the HIV epidemic") (emphasis added). Accordingly, all the eligibility requirements for Ryan White grants are requirements to be met by the state applying for the benefits, any local governmental subrecipients, and the private providers, not by individuals. *See Municipio Autonomo De Ponce v. U.S. Office of Mgmt. and Budget*, 809 F.3d 28 (1st Cir. 2015) (municipality's eligibility for Ryan White benefits).

Further, the Plaintiffs cannot rely on the PRWORA since it expressly states that nothing in that act is to be construed as creating an entitlement. 8 U.S.C. § 1643.

Thus, the plaintiffs have no property interest in any benefits under the Ryan White program. Their procedural due process claim fails and must be dismissed.[6]

**B.    The legislative enactment of H.B. 135 provides all the process that is due.**

Because Plaintiffs do not have a property interest in Ryan White benefits, the Plaintiffs are not due any process. *See Roth*, 408 U.S. at 578 (non-tenured professor with one-year contract "had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of

---

[6] It is also worth pointing out that Plaintiff Dr. Davids is neither a recipient of benefits under the Ryan White program nor a subgrantee under the program. Thus, there is no claim at all that Dr. Davids would have a property interest in benefits under the Ryan White program.

employment"); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (involving welfare benefits in which plaintiffs did have a property interest).

Even if Plaintiffs somehow have a property interest in the Ryan White benefits, they would not be entitled to individualized procedural safeguards due to the adoption of H.B. 135. In *Pimentel v. Dreyfus*, 670 F.3d 1096 (9th Cir. 2012), Washington terminated a state-funded food assistance program for immigrants, who then sought a preliminary injunction on the claim that the program termination came with inadequate notice that violated due process. The Ninth Circuit held that there was no requirement of individual notice because there is "a clear line 'between an individual adverse action and a mass change' in food benefit entitlements." *Id.* at 1110 (citing *Atkins v. Parker*, 472 U.S. 115, 126 (1985)). Indeed, where a change of eligibility requirements is based on a legislative enactment, the "legislative determination provides all the process that is due." *Atkins*, 472 U.S. at 130 (internal quotation omitted). "The claim that petitioners had a constitutional right to better notice of the consequences of the statutory amendment is without merit. All citizens are presumptively charged with knowledge of the law." *Id.*

Because Plaintiffs do not have a property interest in the Ryan White program benefits and, even if they did, the legislative enactment provided all due process, Claim Two must be dismissed.

## III.    H.B. 135 does not violate Equal Protection (Claim Three)

In Claim Three, Plaintiffs claim that H.B. 135 violates the Equal Protection Clause of the Fourteenth Amendment. Once again, Plaintiffs' claim fails and should be dismissed. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (cleaned up). The Court's equal protection analysis consists of three steps: (1) identify the classification, (2) identify a control group of individuals similarly situated in relevant respects,

and (3) identify and apply the appropriate level of scrutiny. *Id.* Courts can dispense with the second step where a statute can be upheld under whatever level of scrutiny is applicable. *Id.*

In this case, the classification contained in H.B. 135 is those who are lawfully present in the United States and those who are not. *See* Idaho Code § 67-7903. "[F]ederal classifications based on alienage are subject to relaxed scrutiny." *Sudomir v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985). However, "state laws discriminating against illegal aliens must be shown to further at least a substantial interest of the state." *Id.* at 1465 (citing *Plyler v. Doe*, 457 U.S. 202, 217–18, 230 (1971)). Where there is "an articulable federal policy," and where the state's practice "correspond[s] to [an] identifiable congressional policy," the "States may, of course, follow the federal direction." *Id.* at 1466 (cleaned up). Thus, where the "state employ[s] both a federal classification *and* a uniform federal policy regarding the appropriate treatment of a particular subclass of aliens," the law is only subject to rational basis review. *Id.*

H.B. 135 employs federal classifications. While H.B. 135 uses the phrase "lawful presence" where 8 U.S.C. § 1611 uses the phrase "qualified alien," it is clear that those terms are synonymous. *See* 8 U.S.C. § 1621(d) (using "lawfully present" as a synonym to "qualified alien"). Further, the statute follows "federal policy regarding the appropriate treatment of a particular subclass of aliens." *Sudomir*, 767 F.2d at 1466. As discussed at length above, federal policy is that "aliens within the Nation's borders not depend on public resources to meet their needs," and "the availability of public benefits not constitute an incentive for immigration to the United States." 8 U.S.C. § 1601(2). Further, the federal government has recently warned states that they "should pay heed to the clear expressions of national policy described above," and made clear that "[e]ven if PRWORA and related regulatory activity do not mandate an entity to conduct verification of the immigration status of a person applying for benefits, *nothing in the statute prohibits such an entity*

*from conducting verification*." 90 Fed. Reg. 31232, 31237 (emphasis added).

Thus H.B. 135 is subject only to rational basis review, under which legislation is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Gallinger*, 898 F.3d at 1017. Congress has already determined that "enact[ing] new rules for eligibility … to assure that aliens be self-reliant in accordance with national immigration policy" is a compelling government interest, as is "remov[ing] the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601 (5), (6); *see Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024) (relying on Congress's finding of a "compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits"). Clearly, H.B. 135 is rationally related to these interests.

H.B. 135 survives even heightened scrutiny. As stated above, the state has two compelling government interests in H.B. 135. Further, Congress has determined that states that choose to follow the Federal classification, as Idaho has done in H.B. 135, "in determining the eligibility of such alien[] for public assistance shall be considered to have chosen the least restrictive means available for achieving the compelling governmental interest of assuring that aliens be self-reliant in accordance with national immigration policy." 8 U.S.C. § 1601(7). Idaho follows the federal classifications in its determinations, by distinguishing between "qualified aliens" and unqualified aliens. While Idaho has made the determination not to apply the exception contained in 8 U.S.C. § 1611(b)(1)(C), that does not mean that Idaho does not follow the federal classifications. As argued above, the exception is not a mandate, and, especially given recent federal government guidance to "pay heed" to the concerns of Congress, Idaho's choice to not apply the exception is wholly consistent with the PRWORA and Congress's intent in passing the statute.

Because H.B. 135 satisfies both rational basis review and heightened scrutiny, Plaintiff's Equal Protection claim fails.

**IV.    Attorney General Labrador should be dismissed because Plaintiffs do not have standing to sue him and the statute gives him no enforcement authority.**

The requirements of Article III standing and of the *Ex parte Young* exception to Eleventh Amendment immunity overlap on the issue of the Attorney General's connection to Plaintiffs' alleged injury. To establish Article III standing, Plaintiffs must show, among other things, that their alleged injury "is fairly traceable to the challenged action of the defendant" so that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" against him. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000). Plaintiffs cannot make the required showing here; they therefore do not have standing to sue the Attorney General.

Similarly, to be a proper defendant under *Ex parte Young,* a state official must have a direct connection to the enforcement of the act; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit. *Animal Legal Def. Fund v. Otter*, 44 F. Supp. 3d 1009, 1016 (D. Idaho 2014) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *accord Ass'n des Eleveur de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (state governor "is entitled to Eleventh Amendment immunity because his only connection to [the challenged statute] is his general duty to enforce California law.").

As in *Animal Legal Defense Fund*, Attorney General Labrador's "general broad powers to enforce or execute the laws of a state . . . are not sufficient to make the officer a proper party defendant." 44 F. Supp. 3d at 1017 (citations omitted). Nor does Attorney General Labrador's authority under Idaho Code § 67-1401(7) to assist, "[w]hen required," a county prosecutor in the

discharge of their duties make the Attorney General a valid defendant for *Ex parte Young* purposes.

Plaintiffs allege that Attorney General Labrador "is a proper defendant in a case challenging the enforcement of an Idaho statute." Dkt. 1 ¶ 85. But Plaintiffs do not attempt to identify any enforcement authority the Attorney General possesses in connection with H.B. 135 that the Court might enjoin him from exercising. The simple reason: there is nothing in H.B. 135 for the Attorney General to enforce against the Plaintiffs. The statute explicitly is aimed at the Department of Health and Welfare (which is the recipient of Ryan White grant funds). There is no mention of the Attorney General. And the statute is not a criminal statute to which Idaho Code § 67-1401(7) might apply, unlike the statute at issue in *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004).

As a result, the Plaintiffs cannot show that the *Ex Parte* Young exception applies and cannot show the traceability or redressability elements of standing against the Attorney General, and he should therefore be dismissed. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021) ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to any enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoin him from exercising.").

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted—Attorney General Labrador should be dismissed as a Defendant and the Complaint should be dismissed with prejudice.

DATED: August 29, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *David J. Myers*
DAVID J. MYERS
Deputy Attorney General

*Attorney for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on August 29, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Paul Carlos Southwick
psouthwick@acluidaho.org

Emily Myrei Croston
ecroston@acluidaho.org

Joanna Cuevas Ingram*
cuevasingram@nilc.org

Kevin Siegel*
siegel@nilc.org

Tanya Broder*
broder@nilc.org

Casey Parsons
cparsons@nrsdt.com

Neal Dougherty*
ndougherty@nrsdt.com

*Attorneys for Plaintiffs*

Seth D. Levy
slevy@nixonpeabody.com

Vincent C. Capati*
vcapati@nixonpeabody.com

Jacqueline D. Relatores*
jrelatores@nixonpeabody.com

Brian J. Whittaker*
bwhittaker@nixonpeabody.com

Nikki Ramierez-Smith
nsmith@nrsdt.com

Talia Burnett*
tburnett@nrsdt.com

*pro hac vice*

/s/ *David J. Myers*
DAVID J. MYERS