UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABBY DAVIDS, M.D.; K.P.; N.R.; F.F.; J.A.O.G.; and JOHN DOE,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JULIET CHARRON, in her official capacity as Director of the Idaho Department of Health and Welfare; MIREN UNSWORTH, in her official capacity as the Deputy Director of IDHW in charge of Health & Human Services; ELKE SHAW-TULLOCH, in her official capacity as the administrator of IDHW's Division of Public Health; ANGIE BAILEY, as the Director of the Idaho Bureau of Rural Health & Primary Care; and RAÚL LABRADOR, in his official capacity as the Attorney General of Idaho,<br><br>　　　　Defendants. | Case No. 1:25-cv-00334-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion to Dismiss Class Action Complaint for Declaratory and Injunctive Relief (Dkt. 40). The Court finds the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process. Accordingly, the Court decides the motion on the parties' briefing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b). For the reasons below, the Court grants Defendants' motion in part and denies it in part.

### INTRODUCTION

This case concerns whether Idaho may implement and enforce Idaho House Bill 135 (H.B. 135) to require immigration-status verification for benefits under the Ryan White Comprehensive

**MEMORANDUM DECISION AND ORDER - 1**

AIDS Resources Emergency Act of 1990, 42 U.S.C. § 300ff, *et seq.*, and the subsequent Ryan White HIV/AIDS Treatment Extension Act of 2009, Pub. L. No. 111-87, 123 Stat. 2885 (the Ryan White Program or the Program). Plaintiff Abby Davids, M.D., treats patients with HIV including patients who receive benefits under the Ryan White Program (Ryan White benefits) (Dkt. 1 at ¶¶ 9-12). She alleges more than sixty patients at her clinic risk losing access to medication because they are undocumented or have immigration statuses whose treatment under H.B. 135 is unclear (*id*. at ¶¶ 11-21).

The remaining Plaintiffs include five Idaho residents, K.P., N.R., F.F., J.A.O.G., and John Doe, who are not citizens of the United States; have HIV; and receive antiretroviral medication through the Ryan White Program because they are low-income, lack adequate insurance, and cannot independently afford treatment (*id*.). K.P. and N.R. have pending asylum applications and employment authorization documents; F.F. has a pending asylum application; J.A.O.G. is a DACA recipient; and John Doe is undocumented (*id*. at ¶¶ 28-33, 39-44, 50-51, 62-66, 72-78).

Plaintiffs challenge H.B. 135, which amended Idaho law governing verification of lawful presence for federal, state, and local public benefits. They allege H.B. 135 conflicts with the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA or the Act), 8 U.S.C. § 1601, *et seq*. Although PRWORA generally restricts Federal public benefits for nonqualified aliens, it provides that such restriction shall not apply to public-health assistance for the testing and treatment of communicable diseases. 8 U.S.C. § 1611(b)(1)(C). Plaintiffs contend that Ryan White benefits fall within this exception and that Idaho may not impose a lawful presence verification requirement which Congress made inapplicable. They also allege the Idaho Department of Health and Welfare's (IDHW) implementation of H.B. 135 deprives them of Ryan White benefits without due process and discriminates against them based on alienage in violation of the Equal Protection Clause.

MEMORANDUM DECISION AND ORDER - 2

Defendants move to dismiss Plaintiffs' action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They argue that Plaintiffs have no private right in equity or under 42 U.S.C. § 1983 to assert a preemption claim; PRWORA neither occupies the field nor conflicts with H.B. 135; Plaintiffs lack a protected property interest in Ryan White benefits; regardless, they received due process due through H.B. 135's enactment; and H.B. 135 satisfies equal protection under either a rational-basis or a heightened standard of review. Defendants additionally argue that Plaintiffs lack standing to sue Attorney General Raúl Labrador because he lacks authority to enforce H.B. 135.

For the reasons discussed below, the Court grants the motion in part and denies it in part. The Court dismisses Claim One (preemption) to the extent Plaintiffs allege it under § 1983 but denies Defendants' motion to the extent the claim is alleged in equity. Further, the Court dismisses Claim Two (due process) but denies Defendants' motion to dismiss Claim Three (equal protection). Finally, the Court concludes that the Attorney General is not a proper defendant and dismisses him.

## BACKGROUND

The Ryan White Program is a federally funded program, which provides medical care and medications to low-income people with HIV who lack other means of obtaining treatment. The Program's purpose is "to provide emergency assistance to localities disproportionately affected by the HIV (human immunodeficiency virus) epidemic and to make financial assistance available to develop, organize, coordinate, and operate a more effective and cost efficient system for the delivery of essential services to individuals and families with HIV." *AIDS Healthcare Found. v. Dep't of Pub. Health*, 17 Wash. App. 2d 2014 (2021) (unpublished), 2021 WL 1535452, at *1 n.1 (citing 42 U.S.C. § 300ff). The U.S. Department of Health and Human Services (HHS) provides

MEMORANDUM DECISION AND ORDER - 3

funding and oversight for the Program. The State of Idaho receives three grants from HHS for the Program, and IDHW administers the Program at the state level by making subgrants to healthcare providers who treat eligible aliens.

In 1996, Congress passed PRWORA, which restricts public benefits for "aliens"[1] based on a national policy that aliens should "not depend on public resources to meet their needs" and that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." 8 U.S.C. § 1601(2)(A), (B). "To accomplish these objectives, [PRWORA] sets out a comprehensive set of eligibility requirements governing aliens' access to both federal and state benefits." *Korab v. Fink*, 797 F.3d 572, 580 (9th Cir. 2014).

PRWORA generally defines a "Federal public benefit" as "any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States" and "any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States." 8 U.S.C. § 1611(c)(1)(A)(B). HHS interprets Federal public benefits to include benefits for the treatment of communicable diseases, such as HIV. 90 F.R. 31232-01, 2025 WL 1918372, at *31236 (July 14, 2025) (providing public health assistance for treatment of symptoms of communicable diseases is "very much" a Federal public benefit).

For purposes of allocating Federal public benefits, PRWORA creates two categories of aliens: qualified aliens and nonqualified aliens. The Act defines "qualified aliens" as "legal

---

[1]    Because PRWORA refers to "aliens," the Court likewise uses the term in its decision to avoid confusion.

permanent residents, asylees, refugees, certain parolees, and aliens who fall within other limited categories specified in the statute." *Korab*, 797 F.3d at 575 (citing 8 U.S.C. § 1641(b), (c)). Only qualified aliens are entitled to receive Federal public benefits; nonqualified aliens are not. PRWORA's general rule is that "an alien who is not a qualified alien . . . is not eligible for any Federal public benefit." 8 U.S.C. § 1611(a). PRWORA provides exceptions to this general rule, however. Relevant here, the Act provides that even an alien who is not "qualified" shall receive public health assistance for immunizations and the testing and treatment of communicable diseases. 8 U.S.C. § 1611(b)(1)(C)-(D).

In 2007, the Idaho Legislature adopted Idaho Code § 67-7903, which tracked PRWORA's eligibility requirements. Like PRWORA, § 67-7903 originally provided state agencies "shall verify the lawful presence" of a person applying for Federal public benefits. *Id.* at § 67-7903(1) (2007). Also like PRWORA, however, § 67-7903 provided exceptions to this verification requirement for the same categories of Federal public benefits that PRWORA exempted from its qualified alien requirement. *Compare* 8 U.S.C. § 1611(b)(1)(A)-(D) *with* I.C. § 67-7903(3)(a)-(e) (2007). In other words, § 67-7903 previously did not require persons to verify their lawful presence in the United States to receive benefits "for [the] treatment of symptoms of communicable diseases," like the Ryan White benefits.

On April 3, 2025, however, Idaho's Governor signed H.B. 135,[2] which amends § 67-7903. This amendment, in part, deletes the reference to the receipt of benefits for the treatment of communicable diseases from the list of those benefits which do not require lawful presence verification. *Compare* I.C. § 67-7903(3) (2025) (deleting the exception "For public health

---

[2]   H.B. 135 became effective on July 1, 2025.

assistance for immunizations with respect to immunizable diseases and testing and treatment of symptoms of communicable diseases . . . .") *with* I.C. § 67-7903(3)(d) (2007). Further, the amendment deletes references to federal law exemptions and other laws not requiring proof of lawful presence. *Compare* I.C. § 67-7903(1), (3) (2025) (deleting the exceptions "where exempted by federal law" and "[f]or any purpose for which lawful presence in the United States is not required by law, ordinance or rule") *with* I.C. § 67-7903(1), (3)(a) (2007). Although the IDHW has not previously required lawful presence verification for participation in the Ryan White Program, the IDHW indicated on April 16, 2025—shortly after the Governor signed H.B. 135— that it may require such verification, although it has allegedly failed to provide any specific guidance about this new requirement (Dkt. 1 at ¶¶ 15-17, 20-21).

On June 26, 2025, Plaintiffs filed this action challenging H.B. 135. Plaintiffs allege that "before H.B. 135, immigration status did not render patients ineligible" for benefits from the Ryan White Program but that under H.B. 135 they "will be unable to provide proof of immigration status sufficient to receive federally-funded [services]" under the Program (*id.* at 3; *id.* at ¶ 19). Based on these allegations, Plaintiffs assert claims for relief under the Supremacy Clause, the Due Process Clause, and the Equal Protection Clause (*id.* at ¶¶ 116-139). Plaintiffs assert all their claims under 42 U.S.C. § 1983; they also assert their Supremacy Clause and Due Process Clause claims in equity (*id.* at 25-26; *id.* at ¶ 121).

Plaintiffs allege IDHW interpreted H.B. 135 to require lawful-presence verification for Ryan White benefits (*id*. at ¶¶ 15-21, 27, 102-03). They further allege, on information and belief, that the Attorney General advised IDHW that H.B. 135 required verification for programs including the Ryan White Program (*id*. at ¶ 85). On April 16, 2025, IDHW informed Ryan White case managers that H.B. 135 might require verification of patients' immigration status; meeting

notes stated that case managers could continue providing services to undocumented clients until July 1 (*id.* at ¶ 15). Providers thereafter requested guidance concerning which immigration statuses and documents would satisfy H.B. 135 and when verification would occur, but Plaintiffs allege IDHW did not provide clear answers (*id.* at ¶¶ 15-21). On May 30, IDHW informed Dr. Davids that lawful presence would need to be verified for persons applying to participate in the Program; IDHW explained its decision during a June 4 meeting (*id.* at ¶¶ 15-17). On June 18, Dr. Davids received a letter from IDHW stating that, beginning July 1, Ryan White recipients must satisfy H.B. 135's lawful-presence criteria (*id.* at ¶ 27).

## LEGAL STANDARD

Rule 12(b)(1) provides a defendant may move to dismiss an action for lack of subject matter jurisdiction. A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1) because standing is a jurisdictional matter. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing standing and must clearly allege facts demonstrating each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In deciding a Rule 12(b)(1) motion challenging standing, the court must accept all material allegations as true and construe them in the plaintiff's favor. *Chandler v. State Farm Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). A motion asserting Eleventh Amendment immunity may be brought under either Rule 12(b)(1) or Rule 12(b)(6). *Sato v. Orange County Dep't of Education*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

Dismissal under Rule 12(b)(6) is appropriate when a complaint fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of a plaintiff's claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed

**MEMORANDUM DECISION AND ORDER - 7**

factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts which, if true, state a plausible claim for relief. *Id.* A claim is facially plausible when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Twombly*, 550 U.S. at 555.

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. In resolving the Rule 12(b)(6) issues, the Court confines its factual review to the complaint and materials properly considered with it.

## ANALYSIS

### A.    Claim One – Supremacy Clause

Plaintiffs' Claim One alleges H.B. 135 violates the Supremacy Clause and seeks injunctive relief under both § 1983 and in equity (Dkt. 1 at ¶¶ 116-122). Defendants argue that Plaintiffs do not have a private right of action under either § 1983 or in equity (Dkt. 40-1 at 5-9). The Court concludes that Plaintiffs may pursue Claim One for preemption in equity but not under § 1983 and that they have stated a plausible claim for conflict preemption.

#### 1.    Equity

Defendants argue that "Congress has expressly and impliedly precluded private enforcement of PRWORA through its complex immigration verification system and [its] express statement in 8 U.S.C. § 1643(a)(1) that PRWORA is not intended to be construed as an

entitlement" (Dkt. 40-1 at 6). In support, they rely on *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).

The Supreme Court in *Armstrong* addressed whether plaintiffs, who were residential habilitation service providers, could sue Idaho officials for injunctive relief in equity for reimbursing them at rates lower than required by § 30(A) of the Medicaid Act. *Armstrong*, 575 U.S. at 323-24. On appeal, the Ninth Circuit ruled that the plaintiffs had an implied right of action under the Supremacy Clause to seek injunctive relief. *Id.* at 324. The Supreme Court reversed. *Id.* at 332. It ruled that "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Id.* at 324 (quotations and citations omitted). Further, the Court ruled that Congressional intent may constrain a court from granting equitable relief under a statute, explaining that "the power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Id.* at 327.

To determine whether Congress expressed an intent to foreclose injunctive relief under the Medicaid Act, the *Armstrong* Court considered two factors: (1) whether Congress expressly provided for "one method of enforcing a substantive rule suggesting Congress intended to preclude others"; and (2) whether Congress conferred a judgment-laden standard on an executive department to enforce the act. *Id.* at 328 (citation omitted). The Court concluded that § 30A met these factors: First, the Court noted that Congress had provided "the sole remedy" for a State's failure to comply with the act's requirements; i.e., the Government may withhold Medicaid funds. *Id.* Second, it noted that § 30A's broad, non-specific mandate made the statute "judicially unadministrable." *Id.*

*Armstrong*, however, does not stand for the proposition that a plaintiff can never raise a challenge in equity that a federal law preempts state law. As the Supreme Court noted in

**MEMORANDUM DECISION AND ORDER - 9**

*Armstrong*, it has "long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating or planning to violate, federal law." *Id.* at 326; *see also Trump v. Cook*, 146 S. Ct. 2234, 2251 n.2 (2026) (noting plaintiffs may sue in equity without congressionally-provided cause of action to prevent injurious act by public officer); *Farmworker Assoc. of Fla., Inc. v. Uthmeier*, 792 F. Supp. 3d 1306, 1327 n.6 (S.D. Fla. 2025) (citing to "other courts around the country [which] have also uniformly held that plaintiffs may invoke a federal court's equitable jurisdiction to enjoin the enforcement of a preempted state law").

At issue here is whether Congress expressly or impliedly limited the Court's equitable power to enforce PRWORA under the Supreme Court's two-factor analysis in *Armstrong*. Defendants argue that PRWORA expressly precludes private enforcement (Dkt. 40-1 at 6). In support, they rely on § 1601, which expresses a policy that "aliens within the Nation's borders not depend on public resources to meet their needs" and § 1643, which provides that PRWORA is not to be construed as "an entitlement" but rather relates "to the general issue of eligibility or ineligibility on the basis of alienage." 8 U.S.C. §§ 1601(2)(A), 1643(a)(1).

Neither of these provisions, however, creates a sole remedy (or any remedy) for a State's failure to comply with PRWORA, as in *Armstrong*. *See* 575 U.S. at 328 (noting Congress provided "sole remedy" for State's failure to comply with Medicaid Act). Regarding eligibility, PRWORA provides that, generally, an alien who is not qualified is not eligible for any Federal public benefit except that this general rule shall not apply, as relevant here, to "[p]ublic health assistance . . . for testing and treatment of symptoms of communicable diseases." 8 U.S.C. § 1611(b)(1)(C). Defendants do not identify any provision of PRWORA which provides a remedy for a state's failure to comply with this exception.

**MEMORANDUM DECISION AND ORDER - 10**

Defendants also rely on §§ 1611 through 1615, collectively (Dkt. 40-1 at 7). They argue that these provisions "set forth a complex system for determining which aliens would be eligible for certain federal benefits based, in part, on the specific federal benefit program and the alien's immigration status" (Dkt. 40-1 at 7). Defendants do not elaborate on this argument, and the Court disagrees that PRWORA is complex or "judgment ladened" as it relates to unqualified aliens. Section 1611(b)(1) clearly establishes exceptions for unqualified aliens and determining who is an unqualified alien does not involve "a complex verification system" (*see* Dkt. 40-1 at 7) (arguing §§ 1611-1615 involve "complex verification system").

The Court also disagrees with Defendants' assertion that Plaintiffs are not seeking protection "against the enforcement of an allegedly preempted state law" but are instead seeking a form of "additional payment" (Dkt. 40-1 at 8). The preempted state law Plaintiffs seek to enjoin is H.B. 135's lawful presence verification requirement for Ryan White benefits. Contrary to Defendants' suggestion, they are not seeking additional benefits.

Finally, Defendants' reliance on *Alexander v. Sandoval*, 532 U.S. 275, 293 (2001), is misplaced. *Sandoval* addresses whether Congress created an implied statutory cause of action. *Id.* Plaintiffs do not argue PRWORA implies a cause of action; rather, they invoke traditional equitable authority to prevent enforcement of allegedly preempted state law. Because Defendants have not shown that Congress expressed or implied an intent to displace that remedy, the Court denies their motion to dismiss Claim One to the extent it alleges a traditional equitable preemption claim.

### 2.    § 1983

The Court, however, grants Defendants' motion to dismiss Claim One to the extent it relies on § 1983. Defendants argue Plaintiffs do not have a private right of action under § 1983 to allege

preemption. In support, they rely on *Medina v. Planned Parenthood S. Atlantic*, 606 U.S. 357 (2025). In that case, the Supreme Court ruled that "§ 1983 provides a cause of action only for the deprivation of rights, privileges, or immunities, not benefits or interest" and that "to prove that a statute secures an enforceable right, privilege or immunity" a plaintiff must show that "the law in question clearly and unambiguously uses rights-creating terms." *Id.* at 368. Defendants argue that *Medina* forecloses Plaintiffs' preemption claim under § 1983 (Dkt. 40-1 at 8-9).

Plaintiffs acknowledge that they are "not aware of any controlling authority recognizing a private right of action under § 1983 for their preemption claim" (Dkt. 42 at 7 n.2). They note, however, that "courts have not yet had the opportunity to fully interpret or apply *Medina* in analogous contexts" and that "relevant case law is still percolating" (*id.*). Accordingly, they propose "reserv[ing] the right to provide notice" if new, clarifying authority emerges (*id.*).

Plaintiffs, however, have no such right under the Federal Rules of Civil Procedure to avoid a dismissal. Because no authority presently supports Plaintiffs' assertion of a § 1983 claim for preemption and they have not identified any "percolating" law on the issue, the Court dismisses Claim One without prejudice to the extent it relies on § 1983. If Plaintiffs intend to reassert the claim for preemption in the future under § 1983 based on new authority, they must timely move to amend in compliance with the Federal Rules of Civil Procedure, including Rule 15.

### 3.     Conflict Preemption

Because Plaintiffs have stated a valid claim for preemption in equity, the Court considers whether PRWORA preempts H.B. 135's lawful presence verification requirement. The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." Art. VI, cl. 2. The Clause provides "a rule of decision" for determining whether federal or state law applies in a particular situation. *Armstrong*, 575 U.S. at 324. If federal law "imposes

**MEMORANDUM DECISION AND ORDER - 12**

restrictions or confers rights on private actors" and "a state law confers rights or imposes restrictions that conflict with the federal law," "the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Assn.*, 584 U.S. 453, 477 (2018). "Under this principle, Congress has the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

Here, Plaintiffs allege H.B. 135 violates the Supremacy Clause under both field preemption and conflict preemption (Dkt. 1 at 119-120). Under conflict preemption, state laws are preempted "when they conflict with federal law." *Arizona*, 567 U.S. at 399. Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotations omitted). The "conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress," *Kansas v. Garcia*, 589 U.S. 191, 202 (2020), not from a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011).

At issue is whether H.B. 135's lawful presence verification requirement directly conflicts with § 1611(b)(1)(C). As this Court previously noted, H.B. 135 creates two direct conflicts with PRWORA (Dkt. 37 at 16-17). First, H.B. 135 removes the express acknowledgment in former Idaho Code 67-7903 that the lawful presence requirement did not apply if there was a relevant federal exemption. Because the Court finds that honoring PRWORA's exceptions is mandatory, H.B. 135's removal of that language creates an irreconcilable conflict. Any program in Idaho relying on an exception found in 8 U.S.C. 1611(b)(1)(C) would, at least facially, violate the current Idaho Code § 67-7903.

MEMORANDUM DECISION AND ORDER - 13

Second, the requirement—according to the IDHW's interpretation—that persons must verify their lawful presence in the United States to receive benefits under the Ryan White Program directly conflicts with § 1611(b)(1)(C). Compliance with both § 1611(b)(1)(C), which provides benefits for the treatment of communicable diseases *shall not* be subject to the qualified alien requirement, and with IDHW's interpretation of H.B. 135 to impose a lawful presence requirement for such benefits is "a physical impossibility." Further, H.B. 135 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of PRWORA to provide nonqualified aliens with treatment for communicable diseases. *See Arizona*, 567 U.S. at 399 (ruling preemptive conflict occurs when "compliance with both federal and state regulations is a physical impossibility" or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress").

Defendants offer three arguments why H.B. 135's lawful presence verification requirement does not conflict with PRWORA. The Court, however, is not persuaded that these arguments warrant dismissal of Plaintiffs' preemption claim for failure to state a claim. First, Defendants assert that although § 1161(b)(1) provides exceptions to the general rule that an unqualified alien is not eligible for any Federal public benefits, "those exceptions mean a state *can* offer benefits . . . but is *not* required to do so" (Dkt. 40-1 at 12) (emphasis added). In making this assertion, Defendants reason that the phrase "shall not apply" in § 1161(b)(1) means "may" and "is not in fact mandatory" (*id.*). The Court declines at this stage of the litigation to construe "shall" to mean "may." As the Supreme Court has noted, "the word 'shall' usually connotes a requirement," "[u]nlike the word 'may,' which implies discretion." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (recognizing that "shall" is "mandatory" and "normally creates an obligation

impervious to judicial discretion"); *United States v. Rodgers*, 461 U.S. 677, 706 (1983) (explaining that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion").

Likewise, Defendants' reliance on *Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001), does not support Defendants' construction of "shall" as permissive. The asserted duty there arose only after the agency's discretionary, antecedent finding. *Id*. at 902-04. Here, § 1611(b)(1)(C) does not contain any comparable discretionary predicate; rather, it directly provides that subsection (a) "shall not apply." Finally, the Court disagrees that PRWORA's general policy declarations can override Congress's exception for the treatment of communicable diseases. Otherwise, that exception would be superfluous.

Defendants also rely on the Department of Justice's (DOJ) decision not to exercise its discretion under § 1611(b)(1)(D) to argue that § 1611(b)(1)(C) does not preempt H.B. 135's lawful presence verification requirement (Dkt. 40-1 at 13-14). Section 1611(b)(1)(D) provides that the Attorney General for the United States may except certain Federal public benefits from the general rule that nonqualified aliens are ineligible, if those benefits meet three specific criteria. *See* 8 U.S.C. § 1611(b)(1)(D)(i)-(iii) (setting forth criteria). In July 2025, the DOJ issued an order providing notice that the U.S. Attorney General had changed her position and chosen not to except any benefits from PRWORA beyond those excepted by the statute itself. 90 FR 32023-01, 2025 WL 1939232, at 32025 (July 16, 2025). The U.S. Attorney General's discretionary decision under § 1611(b)(1)(D), however, has no bearing on whether H.B. 135 conflicts with § 1611(b)(1)(C)— which is a different exception regarding treatment of communicable diseases. Unlike § 1611(b)(1)(D), PRWORA does not grant any discretion—to either the U.S. Attorney or the State—*not* to comply with § 1611(b)(1)(C).

MEMORANDUM DECISION AND ORDER - 15

Finally, Defendants argue that HHS's interpretation of the term "Federal public benefit" supports their position that H.B. 135 is compatible with PRWORA (Dkt. 40-1 at 13). In July 2025, HHS provided notice of its interpretation of "Federal public benefit," including that although § 1611(b)(1) excludes certain benefits "from the ambit of § 1611(a)," those benefits (including for treatment of communicable diseases) are Federal public benefits. 90 F.R. 31232-01, 2025 WL 1918372, at *31236 (July 14, 2025). In addition to providing this revised interpretation of "Federal public benefit," HHS's notice appears to reject PRWORA's exceptions for unqualified aliens, stating that "even if PRWORA and related regulatory activity do not mandate an entity to conduct verification of the immigration status of a person applying for benefits, nothing in the statute prohibits such an entity from conducting verification." *Id.* at *31238.

HHS's statement suggesting that § 1611(b)(1) is not mandatory, however, is conclusory. HHS does not provide any reasoned interpretation of PRWORA to support its position that § 1611(b)(1) is not a mandate. Indeed, HHS does not provide any analysis to support its position. Absent a more fulsome explanation and analysis, HHS's purported interpretation is not persuasive. *See Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (noting agency's interpretation may be persuasive depending on thoroughness of consideration, validity of reasoning, and consistency); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 399 (2024) (rejecting the premise that courts "mechanically afford binding deference to agency interpretations" of a statute). Presently, this Court declines to adopt an interpretation of § 1611(b)(1)(C) as nonmandatory. Accordingly, the Court concludes Plaintiffs have plausibly alleged a claim that § 1611(b)(1)(C) directly conflicts with and preempts H.B. 135's lawful presence verification requirement.

Because the Court concludes H.B. 135 likely conflicts with PRWORA and is preempted, it does not address Plaintiffs' allegations that PRWORA completely preempts the field of regulations governing public benefits for aliens. Regardless, it notes that only one federal district court has previously ruled that PRWORA establishes broad field preemption. *See League of United Latin Am. Citizens v. Wilson*, 997 F. Supp. 1244 (C.D. Cal. 1997). Based on that authority alone, the Court declines to reach the same broad ruling. For the reasons discussed above, the Court concludes that Plaintiffs have stated a viable preemption claim in equity; it denies Defendants' motion to dismiss Claim One to the extent it is asserted in equity; but it dismisses Plaintiffs' preemption theory under § 1983 without prejudice.

**B.      Claim Two – Due Process**

Plaintiffs' Claim Two alleges that they have a protectable property interest in Ryan White benefits; IDHW instituted a lawful presence verification requirement "based on a mistaken interpretation of H.B. 135" without notice, comment period, hearing, or a grace period; and this lack of procedural safeguards violates the Due Process Clause (Dkt. 1 at ¶¶ 125-129). Defendants dispute that Plaintiffs have a protectable interest in benefits and argue the Plaintiffs are not entitled to individual due process but rather received adequate due process through H.B. 135's legislative enactment. The Court concludes that Plaintiffs have allege a plausible protected right but have not alleged Defendants deprived them of due process by denying their individual rights to benefits.

**1.      Procedural Due Process**

To state a claim for a violation of procedural due process, a plaintiff must plausibly allege three elements: (1) a constitutionally protected property interest; (2) the government's deprivation of that interest; and (3) a lack of process. *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022). Property interests "are created and their dimensions are defined by existing rules or

**MEMORANDUM DECISION AND ORDER - 17**

understandings that stem from an independent source . . . that secure certain benefits and that support claims of entitlement to those benefits. *Sterling v. Feek*, 150 F.4th 1235, 1248 (9th Cir. 2025) (quotation omitted).

"A person has a protected property interest in a government benefit when the individual seeking the benefit has a legitimate claim of entitlement to it," which "exists when there are conditions under which a benefit  must be granted" or "limited conditions under which the benefit can be denied." *Id.* "Property interests can be conferred in many ways including by statute, regulation, contract, or established practice." *Id.* (quotation omitted). If the conferring authority uses mandatory language requiring the government to provide benefits based on specific objective eligibility criteria, the resulting entitlement is constitutionally protected. *Id.*

The due process constitutionally required depends on the nature of the governmental action. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). When the government deprives an individual of benefits based on facts particular to that person, due process may require individualized notice and an opportunity to be heard. *See Goldberg v. Kelly*, 397 U.S. 254, 267–71 (1970). By contrast, when legislation makes a generally applicable substantive change to a public-benefit program, "the legislative determination provides all the process that is due." *Atkins v. Parker*, 472 U.S. 115, 129–30 (1985); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1110–11 (9th Cir. 2012).

### 2. Protected Property Interest

Defendants argue that Plaintiffs have no protected property interest because "Idaho is free to opt in or out of the [Ryan White Program] at any time" and "whether the State applies for the grants is discretionary" (Dkt. 40-1 at 16). In support, they rely on *Smith v. Reynolds*, 139 F.4th 631 (8th Cir. 2025). In that case, the Eighth Circuit ruled that the plaintiff lacked a property interest in

MEMORANDUM DECISION AND ORDER - 18

federally funded unemployment benefits under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), 15 U.S.C. §§ 9001-9141, because Iowa's participation in the CARES Act was discretionary. *Smith*, 139 F.4th at 636.

Plaintiffs respond that *Smith* is inapposite because Iowa opted out of the CARES Act; while in this case, Idaho continues to participate in the Ryan White Program (Dkt. 42 at 20). Further, Plaintiffs note that the Ninth Circuit has ruled that "benefits provided by federal-state cooperative programs can create property interests even where state participation in the program is voluntary." *Sterling*, 150 F.4th at 1250. In *Sterling*, the Ninth Circuit ruled that "the relevant inquiry is not whether states have discretion to *participate* in the [federal] program," but "whether states have open-ended discretion to *award* [federal program] benefits." *Id.* Further, it ruled that if the conferring statute "uses mandatory language that requires the government to provide benefits based on specific objective eligibility criteria, the resulting entitlement is constitutionally protected." *Id.* at 1248 (quotation omitted).

Here, PRWORA does not provide Defendants with open-ended discretion to denying Ryan White benefits. Rather, § 1611(b)(1)(C) uses mandatory language providing nonqualified aliens eligibility for Federal public benefits for treatment of communicable diseases. Under *Sterling*, the fact that Idaho may opt out of the Ryan White Program does not conclusively mean Plaintiffs do not have a property interest in the benefits. Further, as Plaintiffs note, Idaho has not opted out of the Program. Instead, H.B. 135 attempts to opt out of the mandatory requirements under PRWORA to provide benefits to nonqualified aliens. Because Defendants do not have the discretion under PRWORA to deny Plaintiffs Ryan White benefits based on their lawful presence, the Court finds that Plaintiffs (other than Dr. Davids) have plausibly alleged a constitutionally protected interest in those benefits.

### 3.     Adequacy of Process

Defendants argue that Plaintiffs are not "entitled to individualized due process safeguards due to the adoption of H.B. 135 and rely on *Pimental*, 670 F.3d 1096. Defendants' argument appears to be that because the Idaho Legislature extinguished Plaintiffs' property interests, no more process was required than that legislative process. *See Atkins*, 472 U.S. at 130 (noting distinction between legislatively mandated change in scope of entire project versus individual eligibility determinations).

Plaintiffs respond that Defendants misunderstand their argument (Dkt. 42 at 23) ("That is not Plaintiffs' argument."). According to Plaintiffs' allegations, they are challenging IDHW's imposition of a lawful presence verification requirement "based on a mistaken interpretation of H.B. 135" without notice, comment period, hearing, or a grace period; and this lack of procedural safeguards in violation of their due process rights (Dkt. 1 at ¶ 127). In other words, they are not challenging H.B. 135 per se but IDHW's administration of that provision.

Although somewhat convoluted, Plaintiffs' argument appears to be prospective; namely that if IDHW were to terminate the benefits of any aliens who could not verify their lawful presence without providing them "procedural safeguards," then that termination would violate due process (*see* Dkt. 42 at 23) ("Plaintiffs seek . . . generally applicable procedural safeguards *should* the state decide to terminate the Ryan White benefits for anyone who cannot prove lawful presence.") (emphasis added). No Plaintiff, however, has alleged that IDHW has terminated his benefits based on his unlawful presence or otherwise. Further, Plaintiffs have not alleged that IDHW intends to terminate benefits without adequate due process. Absent these or similar

allegations, Plaintiffs' due process violation claim is not ripe for review.[3] Accordingly, the Court grants Defendants' motion to dismiss Claim Two without prejudice.

## C.    Claim Three – Equal Protection

Plaintiffs allege that H.B. 135 violates the Equal Protection Clause because it "discriminate[s] based on alienage"; Idaho's desire to "favor its own citizens over aliens in the distribution of limited resources such as welfare benefits is not a compelling state interest justifying classification based on alienage"; and H.B. 135 cannot withstand heightened judicial scrutiny (Dkt. 1 at ¶¶ 133, 136) (cleaned up). Defendants argue that because H.B. 135 uses "a federal classification and a uniform federal policy" it is subject only to rational basis review (Dkt. 40-1 at 18). The Court concludes Plaintiffs have plausibly stated a claim for violation of the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Harrison v. Kernan*, 971 F.3d 1069, 1075 (9th Cir. 2020) (cleaned up). The Equal Protection Clause protects aliens. *Korab*, 797 F.3d at 579. In resolving an Equal Protection claim, a court first identifies the state's classification of groups and then determines whether there is "a control group composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018). "To state an equal protection claim of any stripe, whatever the level of scrutiny it invites, a plaintiff must show that

---

[3]    The Court understands that IDHW likely has not terminated benefits because this Court has enjoined H.B. 135's lawful presence verification requirement. If IDHW were to terminate benefits without adequate procedural safeguards, then those Plaintiffs whose benefits are terminated could conceivably move to amend the complaint, assuming the claim were one which could be resolved in a class action.

the defendant treated the plaintiff differently from similarly situated individuals." *Pimentel*, 670 F.3d at 1106.

After this threshold showing of dissimilar treatment, then the court must determine what level of scrutiny applies. *Id.* "*State* discrimination against aliens is typically subject to strict scrutiny, while *federal* discrimination is subject to rational basis review." *Id*. at 1106 n.10. Under the uniform-rule doctrine, however, "*state* discrimination is subject . . . to rational basis review when a state's action merely implements a uniform federal rule which discriminates on the basis of alienage" *Id.* at 1106.

Here, Plaintiffs have alleged a plausible claim for violation of the Equal Protection Clause. Plaintiffs allege a classification based on alienage, namely that Idaho citizens and aliens are similarly situated and should be treated alike for purposes of Ryan White benefits but H.B. 135 treats nonqualified aliens differently than citizens because it requires them to verify their lawful presence to receive benefits (Dkt. 1 at ¶¶ 131-139). As a result, heightened scrutiny applies because a state's discrimination against aliens is typically subject to strict scrutiny. *Id.* at 1106 n.10.

The Court is not presently persuaded by Defendants' argument that rational basis review applies. Defendants argue that "the classification" at issue is "those who are lawfully present in the United States and those who are not"; H.B. 135 "employed federal classifications" because H.B. 135's use of the phrase "lawful presence" is synonymous with PRWORA's use of the phrase "qualified alien"; federal policy under PRWORA is for aliens not to be dependent on public resources; and because H.B. 135 employs "a federal classification and a uniform policy," rational basis review applies (Dkt. 40-1 at 18).

Under the uniform-doctrine rule, however, rational basis review applies only when a state's action "*implements* a uniform federal rule which discriminates on the basis of alienage." *Pimentel*,

670 F.3d at 1106 n.10 (emphasis added). Here, that rule is inapplicable because H.B. 135 has the opposite effect of implementing a federal rule. The federal rule under PRWORA is that nonqualified aliens are eligible for Federal public benefits for the treatment of communicable diseases, such as HIV. 8 U.S.C. § 1611(b)(1)(C). Despite this federal directive, H.B. 135 requires a lawful presence verification requirement, or in other words, it eliminates Ryan White benefits for nonqualified aliens. Defendants do not cite any authority in PRWORA that grants them discretion not to comply with § 1611(b)(1)(C). *Compare Korab*, 797 F.3d at 579 (noting state "is following a federal direction"); *Sudomir v. McMahon*, 767 F.2d 1456, 1466 (9th Cir. 1985) (noting statute requires state to deny benefits to aliens who do not satisfy requirement). Accordingly, rational basis review is inapplicable; Plaintiffs have stated a plausible claim for violation of the Equal Protection Clause; and the Court denies Defendants' motion to dismiss Claim Three.

D.      **Attorney General Labrador**

Plaintiffs allege that the Attorney General "is a proper defendant in a case challenging the enforcement of an Idaho statute" (Dkt. 1 at ¶ 85). Defendants counter that the Eleventh Amendment bars Plaintiffs' action against the Attorney General. The Court agrees with Defendants.

The Eleventh Amendment generally bars federal lawsuits against a state. *Planned Parenthood Great NW, Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 841-42 (9th Cir. 2024). *Ex parte Young*, 209 U.S. 123 (1908), provides an exception to this rule and allows a plaintiff to sue state officials in their official capacities to enjoin the enforcement of an unconstitutional state statute. *Planned Parenthood Great NW*, 122 F.4th at 842. To be a proper defendant under *Ex parte Young*, "a state official must have some connection with the enforcement" of the challenged statute. *Planned Parenthood Great NW*, 122 F.4th at 842

(quotation omitted). "The connection requirement" requires the state official has "a relevant role that goes beyond a generalized duty to enforce state laws or general supervisory power over the persons responsible for enforcing the challenged [statute]." *Id.* (quotations omitted).

Here, Defendants argue that "there is nothing in H.B. 135 for the Attorney General to enforce against Plaintiffs" because it is not a criminal statute and that "the Attorney General has no role in implementing any part of the Ryan White Program" (Dkt. 40-1 at 21; Dkt. 43 at 11). Plaintiffs respond that they are "potentially subject to criminal penalties due to the verification process" which H.B. 135 requires. Specifically, they rely on § 67-7903, which provides an applicant must attest under penalty of perjury that he is lawfully present in the United States and that an applicant "who knowingly makes a false, fictitious or fraudulent statement or representation in an attestation" shall be guilty of a misdemeanor or a felony for subsequent offense. I.C. § 67-7903(4)(d), (6)(c).[4] Further, Plaintiffs rely on § 67-802(7), which provides the Governor may require the Attorney General to assist a prosecuting attorney, and § 67-1401(7), which requires the Attorney General to assist a prosecuting attorney.

The Ninth Circuit has previously concluded that the statutory scheme in Idaho, which grants the Attorney General the authority to enforce criminal statutes, establishes a sufficient connection to redress a plaintiff's alleged injuries and to make the Idaho Attorney General a proper defendant. For example, in *Planned Parenthood Great NW*, 122 F. 4th at 842, the Ninth Circuit held that the Attorney General was a proper defendant because he had the authority to assist in the enforcement of § 18-622, Idaho's statute criminalizing the assistance in performing an abortion. The Ninth Circuit reached the same conclusion in *Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th

---

[4]     Plaintiffs cite Idaho Code § 56-203(4)(d) and (6)(c). There is no such statute, however. Accordingly, the Court assumes they intended to cite § 67-7903.

MEMORANDUM DECISION AND ORDER - 24

Cir. 2024), based on the Attorney General's authority to assist in the enforcement of § 18-623, Idaho's statute criminalizing abortion "trafficking," and in *Planned Parent of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919-20 (2004), based on his authority to assist in the enforcement of § 18-605, Idaho's statute criminalizing the performance of an abortion.

These cases are distinguishable, however, because they address the Attorney General's authority to assist in the enforcement of criminal statutes. Here, as Defendants note, Plaintiffs challenge H.B. 135, which is a civil statute requiring verification. Their complaint does not challenge § 67-7903, which criminalizes false verification. Plaintiffs fail to allege that the Attorney General has the authority to enforce H.B. 135. Further, although they alleged on information and belief that the Attorney General advised the IDHW regarding H.B. 135's application, they do not cite any authority that the Attorney General is a proper defendant because his office advised IDHW. The Court denies to extend the rule that the Attorney General is a proper defendant in a case challenging a criminal statute makes him a proper defendant in a case challenging a civil statute. Accordingly, the Court concludes that the Attorney General is not a proper defendant and dismisses him from this action.

## ORDER

IT IS ORDERED that Defendants' Motion to Dismiss Class Action Complaint for Declaratory and Injunctive Relief (Dkt. 40) is GRANTED IN PART and DENIED IN PART as follows:

1.    The Court **GRANTS** Defendants' motion as to Plaintiffs' assertion of Claim One for preemption under 42 U.S.C. § 1983. That theory is **DISMISSED WITHOUT PREJUDICE**.

2.    The Court **DENIES** Defendants' motion as to Plaintiffs' assertion of Claim One for preemption in equity.

MEMORANDUM DECISION AND ORDER - 25

3.　　The Court **GRANTS** Defendants' motion as to Plaintiffs' Claim Two under the Due Process Clause. Claim Two is **DISMISSED WITHOUT PREJUDICE**.

4.　　The Court **DENIES** Defendants' motion as to Plaintiffs' Claim Three for violation of the Equal Protection Clause.

5.　　The Court **GRANTS** the Defendants' motion as to Defendant Attorney General Raúl Labrador, who is **DISMISSED**.

DATED: August 11, 2026

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 26